# THE STATE v. VICTOR L. RAWLINGS, Appellant.

**Division Two, February 14, 1911.**

1. **CONSTITUTIONAL LAW: Order Houses.** The title of an act, declaring it to be "an act to prohibit persons running order houses from delivering intoxicating liquors to persons having no license to deal in same," and section one of the act, declaring, "It shall be unlawful for any person or persons not a licensed dramshop-keeper or by law authorized to sell liquor as a wholesaler, to order for, receive, store, keep or deliver, as the agent or otherwise, of any other person, intoxicating liquors of any kind whatsoever," are in conflict. The title purports to affect persons running order houses only, but section 1 attempts to reach all classes of persons except dealers in intoxicating liquors.

2. ————: ————: **Individuals.** But section 2 of the act, declaring, "No person shall keep, store or deliver for or to another person, in any county that has adopted or may hereafter adopt the Local Option Law, any intoxicating liquors of any kind whatsoever," and that part of the title declaring it to be "An Act . . . to prohibit the keeping, storing for or delivering to another person intoxicating liquors in Local Option counties," are not in conflict, and the said section 2 is not invalid.

3. ————: ————: **Enacted at Special Session: Recommended in Message.** A recommendation by the Governor in his message to the General Assembly upon its convening in extraordinary session of "effective local option laws for counties, towns and cities" is ample authority, under the Constitution, for the enactment by the Legislature of a law prohibiting the keeping, storing or delivering for or to another person, in any county that has adopted the Local Option Law, of intoxicating liquor.

4. ————: ————: **Special Law.** An act which applies only to counties which have adopted or may hereafter adopt the Local Option Law is not a special or local law.

5    INFORMATION: Delivering Intoxicating Liquor to Another: Surplusage. Where the statute makes it an offense to "keep, store or deliver for or to another" any intoxicating liquor, an information charging that defendant "did willfully and unlawfully order for, receive, keep, store and deliver" intoxicating liquor for another, is not bad. The words "receive" and "order for" may be rejected as surplusage, and still the information is sufficient.

6.    ———: ———: Local Option Not Adopted in City. Where the information charges that the Local Option Law was adopted in a city having 2500 inhabitants, but also charges that the intoxicating liquor was sold in the county and the proof does not show it was sold in the city, whether or not the law was adopted in the city has no bearing on the guilt or innocence of the defendant. It is sufficient to charge and prove that the offense was committed anywhere in the county where the Local Option Law was in force.

7.    ———: ———: What Constitutes the Offense. Defendant informed one Williams that he was going to order whiskey, and was asked by Williams to include in the order a half gallon for him. That was done and when it came Williams went to defendant's tailoring shop, and without communication with him, took away the half gallon only a few minutes after its arrival. Held, that the evidence would not warrant a conviction of storing intoxicating liquor, but justified the court in submitting to the jury the question of whether or not defendant kept or delivered intoxicating liquor to Williams.

8.    ———: ———: ———: Ordering for and Receiving: Instruction. But since a valid information must be based on the section of the statute forbidding defendant to "keep, store or deliver for or to another person" intoxicating liquor, the instruction should not permit a conviction for ordering for or receiving intoxicating liquor for another.

9.    ———: ———: ———: ———: Evidence. But the State should be permitted competent evidence to prove that defendant ordered and received intoxicating liquor for another, as tending to prove that he kept, stored or delivered to another such liquor.

Appeal from Lawrence Circuit Court.—*Hon. W. N. Evans,* Special Judge.

REVERSED AND REMANDED.

232 Sup.—35

*James A. Potter* for appellant; *Edw. J. White* of counsel.

(1) The information is fatally defective in failing to allege that the defendant was engaged in running an "order house" or was acting as an agent for such house or in that capacity. State v. Price, 229 Mo. 670. (2) The information is fatally defective in failing to allege that the person for whom defendant delivered the liquor was not authorized by law to deal in intoxicating liquors. State v. Price, 229 Mo. 670; Laws 1907, pp. 231-232. (2) The court erred in overruling defendant's motion to quash the information in this case. (a) The act under which defendant is being prosecuted is unconstitutional and void because it violates section 28, of article 4, of the Constitution. The body of the act nowhere refers to persons "running order houses," but embraces persons of every class whether engaged in the order house business or not, or whether they have any connection whatever with an order house. Moreover, the title says that it shall be unlawful for a person running an order house to deliver liquor to persons having no license to deal in same, while the body of the act says that it shall be unlawful for any person who is not a dramshop keeper, or by law authorized to sell liquor, to "order for, receive, keep, store or deliver," as the agent of any other person, regardless of whether that other person has a license to deal in liquor. We understand that this court in the case of State v. Price, supra, held that this act did not contain more than one subject-matter. The point that we now raise, that the subject "is not clearly expressed in the title," was not urged in the Price case, and the court's opinion on that point is not final. (b) Section two of the Act of 1907, before referred to, is unconstitutional for the reason that it violates section 30, of article 2, of the Missouri Constitution. The above section is as follows: "That no

person shall be deprived of life, liberty or property without due process of law." Section two of the Act of 1907 makes it a crime to "keep, store or deliver" intoxicating liquors to another person in any "county" that has adopted local option. It must be remembered that the Legislature has previously classified local option territory in this State into cities having over twenty-five hundred inhabitants and the remainder of the counties outside of such cities. Under this section of the act of the Legislature cities are not referred to at all. That is to say, under section 2 of this act it would be no crime to keep, store or deliver intoxicating liquor for another in any city that has adopted local option. It is only a crime in a county that has adopted local option. It cannot be said that the word county includes all territory in the county, including cities of over twenty-five hundred inhabitants, for that construction would make it a crime to do an act in a city where another law says the act is legal. The second section of the act is class legislation. State v. Loomis, 115 Mo. 307; State ex rel. v. Ashbrook, 144 Mo. 375; In re Jilz, 3 Mo. App. 243. (4) The court erred in admitting evidence that defendant ordered liquor for witness Williams, because the information did not charge that defendant was engaged in running an order house, nor connected with an order house, nor that he was habitually engaged in ordering liquor for others. State v. Price, 229 Mo. 670. The court erred in admitting evidence that defendant "received" liquor for Williams. The title to the act nowhere mentions "receiving" liquors for another. The body of the act being broader than the title on this point, the act is void as far as the crime of "receiving" liquor is concerned. (5) The court erred in giving instruction 1, at the request of the State. Under this instruction the court told the jury that if they found and believed from the evidence that the defendant did "order for, receive, keep, store or deliver as the agent or

otherwise of one Will Williams any whiskey" then they should find the defendant guilty. This instruction is wrong for the reason that it did not require the jury to find that the defendant was engaged in running an order house, or that he was the agent of any such house, or that he was habitually engaged in ordering liquors for others. State v. Price, 229 Mo. 670. This instruction is wrong in that it justifies a conviction if defendant received any whiskey for Williams. The title to the act under which defendant was prosecuted nowhere indicates that such an act as receiving liquor shall constitute a crime. Laws 1907, pp. 231-232. This instruction is wrong for the reason that it justifies a conviction of defendant on the grounds that he kept or stored whiskey for Williams. There was no evidence upon which to base such an instruction. The only evidence in the case upon which such an instruction could be based was that the whiskey had been in the place of business "not over five minutes." The words to "keep and to store" have a well-defined meaning in the law. These words always imply the idea of continuity or habit and do not refer to the mere temporary deposit of a thing. Mosely v. State, 74 Ga. 404; Renshaw v. Mo. St. Mutual, 103 Mo. 595; O'Neill v. Insurance Co., 3 N. Y. 122; Insurance Co. v. Lawrence, 61 Ky. 9; Eubanks v. State, 17 Ala. 181; Commonwealth v. Palmer, 134 Mass. 537; People v. Rice, 103 Mich. 350; State v. Miller, 36 Atl. 795; Commonwealth v. Patterson, 138 Mass. 495; Springfield Ins. Co. v. Wade, 58 L. R. A. 714; Mears v. Ins. Co., 92 Pa. St. 15. The instruction is wrong in that it fails to require the jury to find that defendant delivered the whiskey to a person who was not authorized by law to deal in whiskey. State v. Price, 229 Mo. 670.

*Elliott W. Major,* Attorney-General, and *Chas. G. Revelle,* Assistant Attorney-General, for the State.

(1) Appellant's first contention, that the act under which he is prosecuted is obnoxious to section 28 of article 4 of the State Constitution, in that it contains more than one subject, and that the same is not clearly expressed in the title, has but recently received the careful attention of this court, and has been ruled adversely to his claims. State v. Price, 229 Mo. 670. It is a fact within common knowledge that there is perhaps no law whose enforcement has been more strenuously and cunningly resisted by tricks, schemes and covers, than the law looking towards the regulation of the liquor traffic, a business inherently illegal and continued only through sufferance. "For ways that are dark and tricks that are vain, the Chinee is an unsophisticated heathen compared to the bootlegger." State v. Melton, 130 Mo. App. 266. Many means of regulation, among them local option and licensed dramshops with restricted privileges, have been adopted, but, regardless of the peculiar and particular methods applied, they have all dealt with one subject—intoxicating liquor—and have sought but one end, the regulation of the traffic and the subsequent suppression of a conceded evil. It is equally well known, and as to this the Legislature was presumably no more ignorant than the rest of mankind, that prior to the enactment of the statute here involved, the ends of regulation in both local option and dramshop communities were frequently defeated by designing persons who resorted to the practice of taking orders as the agent of the purchaser, and then delivering same to his alleged principal, thus hiding the vendor and concealing himself behind the gloss of agency. This practice could not be successfully prevented without amendments of the nature now under discussion. State v. Winfield, 115 Mo. 428. As the law stood before the present statute

was passed it was a question of fact as to whether the person taking the order was the agent of the vendor or vendee, and this led to much uncertainty and many abuses, substantially the same. facts sometimes affording the basis of a .conviction in one case and failing in another. State v. Melton, 130 Mo. App. 265; State v. Winfield, 115 Mo. 428. In view of the history of the times and the legal situation at the time of the passage of this act, there is nothing strange in the Legislature putting to rest all such uncertainties and declaring as a matter of law, that the act of ordering for or delivering to another, regardless of all questions of agency, any intoxicating liquor in any community, whether under dramshop or local option regulation, should constitute an offense. The title of the act in question clearly expresses such a purpose. There is nothing misleading by the use of the term "order house" in the first portion of the title, and the use of the term "person" instead of "order house" in the body of the act. The term "order house," as there used, does not apply merely to some particular, indefinable kind of an "order house," but to any person or persons who receive orders and send them to persons who fill them, thus carrying on what can be properly termed an order house business. That the title fully satisfies the constitutional provision with reference to the subject being clearly expressed therein, is manifest from other decisions of this court. State v. Doering, 194 Mo. 409; Lynch v. Murphy, 119 Mo. 171; Cox v. Railroad, 174 Mo. 63; O'Connor v. Transit Co., 198 Mo. 637; State ex rel. v. Mead, 71 Mo. 268. (2) (a) Appellant's second and third challenges on constitutional grounds go only to section 2 of the act, which is as follows: "No person shall keep, store or deliver for or to another person, in any county that has adopted, or may hereafter adopt, the local option law, any intoxicating liquors of any kind whatever." It is insisted that merely because this section uses the term

"in the county" without the use of the additional words, "or city, as the case may be," it is a violation of section 30 of article 2, and sections 53 and 54 of article 4, of the State Constitution. In this connection it is said, that, for the purpose of local option laws, the State has been divided and classified into two groups; first, counties; second, cities containing 2,500 or more inhabitants, and that said section 2 of the act is special in that it applies only to counties. Even if appellant's contention in this respect were sound it would avail him nothing since section 1 of the act, which is not open to this alleged objection, is broad enough to, and does, apply to local option counties the same as dramshop counties, and fully covers the offense charged in the information. State v. Price, supra. The invalidity of section 2, if established, would not vitiate section 1. Shiveley v. Langford, 174 Mo. 549; Dent v. Railroad, 83 Mo. 496; State v. Railroad, 219 Mo. 169. This court will not pass upon the constitutionality of a statute unless the same is necessarily involved, and, since a decision as to the validity of section 2 is not necessary to the final disposition of this case, it will serve no purpose to consider the question presented. State v. Grossman, 214 Mo. 233; Watson Seminary v. County Court, 149 Mo. 72; State v. Railroad, 219 Mo. 169; State v. Seebold, 192 Mo. 431. It is a general rule of criminal procedure that if one is indicted under one section of the statute, but the evidence shows that he is guilty of the violation of another section, he may be convicted of the one of which the evidence shows him guilty, provided the indictment is broad enough to include the offense within its allegations. State v. Walker, 221 Mo. 50; State v. Quinn, 170 Mo. 182; State v. Heckler, 81 Mo. 417. (b) From what is heretofore said we do not mean to be understood as in any way conceding the invalidity of section 2 of this act, since, in our opinion, appellant's insistence in this respect is without merit. In the first place

the Legislature has never undertaken to make separate classes of counties and cities for general local option purposes, but only for the purpose of the adoption of the law. After the adoption each provision of the statute operates upon the one in a manner identical with the other. Every statutory provision that is applicable to one is equally applicable to the other, and there is an utter absence of any legislative intent to create a general classification for the purposes of legislation. A violation of this law in a city of 2500 inhabitants or more, is a violation, not only of the city ordinance, but also of the State law, and can be so prosecuted. Each and every city located in this State, except the city of St. Louis, is "in a county," and of this the Legislature, in its enactments, takes notice. Even with the city of St. Louis, the Legislature has declared that wherever it uses the term "county" it must be understood as including that city, unless such construction be inconsistent with its evident intention. R. S. 1909, sec. 8057. It is apparent from these conditions that the Legislature has deliberately brought about a situation which avoids the necessity and inconvenience of referring any more specifically than by the term "county" to all subdivisions of the State. A city of 2500 inhabitants or more, is as much a part and parcel of and "in a county" as any city or town of fewer inhabitants, and it has been so held by the Court of Appeals in dealing with a local option question which bears some relation to the one under discussion. State ex rel. v. Robinson, 129 Mo. App. 147. The construction that the term "county," as here used, applies to and includes all places in the county, among them cities of 2500 inhabitants or more, is perfectly consistent and satisfies the language and preserves the spirit of the statutes. A legislative intent to violate the Constitution can never be assumed if the language of the statute can be satisfied by a contrary construction. General terms should be so limited,

and restricted terms so expanded, in their application as not to render the whole statute invalid as being in conflict with the organic law. State v. Moody, 202 Mo. 127. (c) While in our opinion the second section should be construed so as to apply to cities as well as to all other portions of a county, yet, if the court should adopt appellant's view that because of another classification into cities and counties for local option purposes, and because only counties are specifically mentioned in this section, the cities are excluded, then we must not stop there, but follow such theory to its logical conclusion. Such a theory can be bottomed only upon the premise that the classification into cities and towns for the purposes of legislation is a proper and warranted one. If that be the case, then the Legislature is warranted in recognizing such classification and in enacting laws to cover the one class without making such laws applicable to the other, since it is only necessary in making a law general to make it applicable to all of a single legitimate class. State ex rel. v. Washburn, 167 Mo. 680; Powell v. Sherwood, 162 Mo. 105. If, as appellant concedes, the differences in counties and cities are sufficient to serve as a basis of classification, this very fact, and the power to so classify, necessarily embraces the right to impose upon the one a condition not required of the other, since the lesser is necessarily contained in the greater power. Appellant's inconsistency consists in conceding, on the one hand, the power to classify counties and cities for the purpose of legislation and then from this concession to argue that the power does not exist to subject such classes to different conditions. Trust Co. v. Campbell, 173 U. S. 84.

BROWN, J.—The defendant prosecutes this appeal from a judgment imposing upon him a fine of $300, for violating Laws of 1907, page 232 (now sections 7226 to 7229, R. S. 1909), regulating the keeping,

storing and delivery of intoxicating liquors in counties having adopted the Local Option Law.

The evidence shows that the defendant was running a tailor shop in the city of Mt. Vernon, in Lawrence county, on the first day of December, 1909, and desiring some intoxicating liquor, went to a butcher shop where one Will Williams was employed and asked Williams for the address of certain persons in Springfield, Missouri, who dealt in whiskey. Williams could not furnish the desired address, whereupon the defendant obtained it from another party, went back to the butcher shop and informed Williams that he had procured the address and was going to make the order. Williams then requested defendant to include in the order a half gallon of whiskey for him. Defendant ordered the whiskey which was in a few days delivered at his tailor shop by the expressman. Within a few minutes after the liquor reached defendant's shop, Williams went there and apparently without communicating with defendant, picked up and carried away his half gallon of whiskey. Defendant received no commission or profit from the transaction.

The defendant makes a vigorous assault upon the constitutionality of the law, the sufficiency of the information, on the instructions given by the court, and its rulings upon the evidence introduced by the State.

For a proper understanding of the constitutional questions involved and the sufficiency of the information, we insert below the full title of this act and the first two sections of the act itself:

"*An Act to prohibit persons running order houses from delivering intoxicating liquors to persons having no license to deal in same, and to prohibit the keeping, storing for, or delivering to another person intoxicating liquors in local option counties, and providing penalties for the violations thereof.*

"Section 1. It shall be unlawful for any person or persons not a licensed dramshop-keeper or by law au-

thorized to sell liquor as a wholesaler, to order for, receive, store, keep or deliver, as the agent or otherwise, of any other person, intoxicating liquors of any kind.

"Section 2. No person shall keep, store or deliver for or to another person, in any county that has adopted or may hereafter adopt the Local Option Law, any intoxicating liquors of any kind whatsoever."

The information, omitting caption and affidavit, is as follows:

"Comes now Archie L. Hilprit, prosecuting attorney within and for Lawrence county, Missouri, and acting herein under his oath of office and upon knowledge, information and belief, informs the court that on or about the 11th day of November, 1907, the Act of the Legislature of the State of Missouri approved April 5th, 1887, known as the Local Option Law, was duly adopted in the city of Aurora, Lawrence county, Missouri, said city of Aurora being then and there a city of more than two thousand five hundred inhabitants; that thereafterwards, to-wit, on or about the 13th day of February, 1909, the said act of the Legislature of the State of Missouri, approved April 5th, 1887, known as the Local Option Law, was duly adopted in Lawrence county, Missouri, outside of the corporate limits of said city of Aurora, Missouri, said city of Aurora, Missouri, being then and there a city of more than two thousand five hundred inhabitants; that at all the times hereinafter referred to said law was in full force and effect in Lawrence county, Missouri; that thereafterwards, to-wit, on or about the 1st day of December, 1909, while said law was in full force and effect in said county, one Victor L. Rawlings, in the said county of Lawrence in the State of Missouri, did then and there willfully and unlawfully order for, receive, keep, store and deliver distilled, fermented and intoxicating liquors, to-wit, one-half gallon of whiskey for one Will Williams, the said Victor L. Rawlings not

being then and there a licensed dramshop-keeper or by law authorized to sell liquors as a wholesaler, and the said whiskey not being for the use of the said Victor L. Rawlings or for the use of his family; against the peace and dignity of the State."

A comparison of the foregoing information with the law clearly demonstrates that the information is bottomed on section 2 supra, because it alleges that the crime was committed in a county which had adopted local option. However, the information goes further and charges the defendant with ordering and receiving intoxicating liquor for the witness Will Williams, and as the acts last mentioned are only prohibited by section 1, supra, we are brought first to the consideration of the defendant's contention that said section 1 is unconstitutional because the title of the act does not clearly express the matters contained in said section, as required by section 28 of article 4 of our Constitution.

That part of the title which was intended to cover section 1, supra, is as follows: "An act to prohibit persons running order houses from delivering intoxicating liquors to persons having no license to deal in same."

Section 1 contains no recital whatever about order houses or parties who may be running same, but does purport to prohibit certain persons from ordering or receiving liquors for another.

## OPINION.

It is clear to our minds that the subject of delivering intoxicating liquors is germane to the subject of ordering and receiving such liquors, but this is not the only test which we are required to apply to the law under consideration. Is the subject of ordering and receiving liquors by an individual clearly expressed in a title which only purports to prohibit persons running order houses from delivering such li-

quors? Is not this title misleading? Will a title which purports to prohibit a certain act by a certain class of persons support and carry validity to a law which embraces additional acts committed by persons not within the class mentioned in such title?

We have examined the authorities cited by the learned Attorney-General, but they embrace only cases wherein laws were attacked because their titles were alleged to be too general. They are not applicable to the facts in this case. If the title to the act under consideration had been general, for example, if it had simply read, "An act concerning intoxicating liquors," then it would have supported most any kind of a law affecting the purchase, sale, ordering or delivery of such liquors, but in this case, the title descends into details and attempts to point out a particular class of persons to which that law is intended to apply and the particular acts prohibited, and therefore cannot support a law which is levelled against a wholly different class of persons and prohibits acts not mentioned in such title. [State v. Coffee and Tea Company, 171 Mo. 634; State v. Fulks, 207 Mo. 26; St. Louis v. Wortman, 213 Mo. 131; State v. Persinger, 76 Mo. 346.]

In the case of State v. Great Western Coffee and Tea Company, supra, it was held that the title to an act which was levelled only against the manufacturers of certain kinds of baking powder, would not support a statute which also prohibited persons from selling such baking powder.

In the case of City of St. Louis v. Wortman, supra, the title of a bill only purported to "create the office of State Dairy Commissioner, and to define his term of office, duties and powers," and it was held this title could not carry validity to a section of the same bill which attempted to prohibit individuals from selling impure dairy products.

The doctrine herein announced is supported by a great number of cases, in our own State as well as

other jurisdictions, but we will not encumber this opinion with all of them.

We have examined the original bill as it was introduced in the General Assembly, and find that section 1 appeared therein as follows: "It shall be unlawful for any person to keep an order house where orders for intoxicating liquors are given or received from persons who have no license to deal in such liquors."

This section, by an amendment during its passage through the General Assembly, became an entirely different law from what its author intended it should be, and instead of reaching order houses, was made to apply only to individuals who are not dealing in liquors.

We take judicial notice of the fact that the members of the General Assembly on account of the great number of bills which they are called upon to consider and the short space of time in which they must perform their important duties, are forced to rely in a large measure upon the titles to the several laws which they enact, and where the title to a law like the one we are now considering is clearly misleading, we are forced to declare it unconstitutional.

The doctrine of *expressio unius est exclusio alterius,* to a limited extent, applies to the titles to legislative acts, when as in this case, they descend into details and attempt to prohibit particular acts by a particular class of persons, and we therefore hold that section 1, supra, is unconstitutional, because it attempts to reach all classes of persons except dealers in intoxicating liquors, while its title purports only to affect persons running order houses. We are aware that in the case of State v. Price, 229 Mo. 670, this court intimated that section 1 of the Act of 1907 (now under consideration), was constitutional, but the indictment in that case was bottomed on section 2 of that act and charged the defendant only with keeping, storing and

delivering intoxicating liquor, and the constitutionality of section 1 was not necessarily involved in the decision of that case.

However, while defendant's objection to the title of the bill must be sustained as to section 1 of the act (now Sec. 7226, R. S. 1909), said objection is wholly untenable when applied to section 2 of the same act (now Sec. 7227, R. S. 1909), because the language of said section 2 follows precisely the second subdivision of the title to the bill, and is safely anchored in both the letter and spirit of section 28, article 4, of the Constitution.

Defendant's second assault on the constitutionality of the law under consideration is based upon the fact that said law was passed at an extra session of the Legislature in the year 1907, and that the Governor's message convening the General Assembly in extraordinary session in that year does not embrace the subject of keeping, storing and delivering intoxicating liquors in local option counties, hence the act violates section 9 of article 5 of the Constitution, requiring the Governor in his message to state specifically each matter upon which he deems it necessary for such General Assembly to take action. This point might be very important if section 9 of article 5 of our Constitution stood alone, but we find it very materially modified by section 55 of article 4, which contains the further provision: "The General Assembly shall have no power, when convened in extra session by the Governor, to act upon subjects other than those specifically designated in the proclamation by which the session is called, or recommended by special message to its consideration by the Governor after it shall have been convened."

By this last named section of our organic law, undoubted power is conferred to enact any laws which the Governor may by special message recommend to the General Assembly after it has been convened in extraordinary session. By referring to the Senate and

House Journal of the extra session in 1907, at page 11, we find that the Governor in his first message to that body, recommended that, "Effective local option laws for counties, towns and cities should be enacted."

The foregoing clause of the Governor's message afforded ample warrant to the General Assembly at said extra session to enact section 2, supra, for the purpose of strengthening and making more effective what is known as the Local Option Law, adopted in many counties of this State, to prohibit the sale of intoxicating liquors. [Wells v. Railroad, 110 Mo. l. c. 296-297.]

Therefore, defendant's second assault on the constitutionality of the law under consideration must be overruled.

Defendant's third assault upon the constitutionality of section 2 of the Act of 1907, supra, is that it is class legislation, in that it divides the counties of the State into artificial classes, to-wit, those which have adopted local option, and those which have not; and is therefore violative of section 53 of article 4 of the Constitution, prohibiting the enactment of special laws "regulating the affairs of counties, cities, townships, wards or school districts."

We are aware that the Legislature cannot arbitrarily divide any natural class of persons or municipal bodies into artificial classes and enact laws which apply to only one of such artificial classes. For instance, the Legislature could not enact a law which would make it possible for all counties having 25,000 inhabitants or more, on the north side of the Missouri river, to adopt township organization, and prohibit counties with the same population on the south side of said river from enjoying the same privilege. But we are convinced that when the law permits the citizens of any locality to convert themselves into an artificial class by adopting laws not in force over the whole State, then they may be legislated for or against by a general law which will only apply to the artificial

class to which they have voluntarily assigned themselves. [Rutherford v. Heddens, 82 Mo. 388; Kansas City v. Stegmiller, 151 Mo. 189.] For instance, our general law permits all cities and towns having 500 and less than 3000 inhabitants to organize themselves into cities of the fourth class, but such towns or cities are not bound to avail themselves of this privilege, and it is a well known fact that there are many towns in this State with more than 500 inhabitants which have not been incorporated in any manner. Yet it is perfectly competent for the General Assembly to enact laws which will apply only to cities of the fourth class; and it would not be seriously contended that such a law would apply to any town which possessed the necessary population to become a city of the fourth class, but which had neglected to incorporate itself as such. We therefore conclude that without regard to the population which a county may possess, it may legally convert itself into an artificial class by adopting the Local Option Law; and thereafter it is entirely competent for the Legislature by a general law to regulate the conduct of its citizens by an act which will not apply to those parts of the State where dramshops are permitted. Hence, we must overrule defendant's third and last point of attack on the constitutionality of section 2 of the Act of 1907 now under consideration.

Defendant complains that this information is clearly bottomed on section 2 of the Act of 1907, but charges the defendant with committing certain acts not covered by that section, to-wit, the ordering and receiving of intoxicating liquors. In this contention, defendant is correct, but conceding that the information should not have contained the words "order for" or "receive," it may yet be valid through the saving grace of our criminal statute of jeofails (Sec. 5115, R. S. 1909). This section provides that no information shall be deemed invalid "for any surplusage or repugnant allegation." Hence we can treat the words
232 Sup.—36

"order for" and "receive" in the information as surplusage; and it will still be sufficient. [State v. Meyers, 99 Mo. 107; State v. Currier, 225 Mo. l. c. 650.]

Another assault is made on this information because it charges that the Local Option Law was adopted in the city of Aurora, in Lawrence county, whereas it is alleged that said law was not lawfully adopted in that city. Be that as it may, the information does not charge that the offense was committed in the city of Aurora, neither does the evidence show it to have been committed in that city; consequently whether or not the Local Option Law has been duly adopted in Aurora, a city of 2500 inhabitants, has no bearing on the guilt or innocence of the defendant.

In our opinion where an information—as in this case—charges that the offense was committed in a county which had adopted local option, it is sufficient for the State to prove that the offense was committed at any place in that county where the Local Option Law was in force; and proof that the offense was committed in a city of 2500 inhabitants would be no defense, if the evidence discloses that such city had adopted the Local Option Law.

The evidence in this record would not warrant a conviction for storing intoxicating liquors. A possession lasting only five minutes would not sustain the charge of storing, but the evidence would justify the court in submitting to the jury the question of whether or not the defendant kept or delivered intoxicating liquors to the witness Will Williams.

Defendant's resourceful attorney attacks the information on other minor details which it is not necessary to discuss in this opinion, but as we have decided to reverse the judgment, if the State desires to retry the case, we suggest that the information be amended so as to make it conform to the provisions of section 2 supra, charging the defendant only with the acts of

keeping, storing *for* and delivering *to* the witness Will Williams, etc.

The defendant also complains that the trial court committed error in giving to the jury of its own motion instruction numbered 1, which authorized a conviction if the jury found that the defendant had ordered for or received intoxicating liquor as the agent of the witness Will Williams. We find that this assignment of error is well founded. The State having instituted this prosecution under the provisions of section 2, supra, which do not contain the words, "order for or receive," was not entitled to a conviction on proving that those acts were committed, but if convicted in this case, defendant must be convicted of keeping, storing or delivering intoxicating liquors.

The defendant also complains that the trial court committed error in admitting, over his objection, evidence that he ordered the liquor which he is charged with delivering. To this objection we will say that if the State elects to amend its information in conformity to the laws as herein announced, upon a retrial of the cause it should be allowed to introduce any competent evidence it may have to prove that defendant ordered or received the intoxicating liquor for the witness Will Williams, as tending to prove that he also kept, stored for or delivered the same to said witness, as prohibited by law.

For the error of the trial court in giving to the jury an instruction which authorized a conviction for the acts of receiving and ordering intoxicating liquors, its judgment is reversed and the cause remanded. *Kennish, P. J.*, and *Ferriss, J.*, concur.