## THE STATE OF MISSOURI, Respondent, v. ORANGE BROWN, Appellant.

### Kansas City Court of Appeals, April 5, 1915.

1. **LOCAL OPTION: Criminal Law: Intent.** The defendant and one other was convicted and fined under Sec. 7227, R. S. 1909, relating to the Local Option Law. The defendant and Findling were ignorant teamsters, who were directed and ordered by their employer, Mr. Sharp, to haul a consignment of eighteen barrels of beer to a neighboring town, neither of them knew what was in the barrels. While on the road they were arrested. *Held*, that there was not sufficient evidence to take the issue of defendant's intent to the jury.

2. ———: ———: ———. Where one is in possession of beer, not a common carrier, but as a servant of the purchaser, he is "keeping it" within the prohibition of the statute, provided he knows that he is transporting and intending to deliver to his employer beer, imported into the country for the purpose of being disposed of in violation of the Local Option Law.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,* Judge.

REVERSED.

*Cooley & Murrell* for appellant.

*G. C. Weatherby* for respondent.

JOHNSON, J.—Defendant was convicted and fined three hundred dollars (the minimum penalty) for an alleged violation of section 7227, Revised Statutes 1909, which provides: "No person shall keep, store or deliver for or to another person, in any county that has adopted or may hereafter adopt the Local Option Law, any intoxicating liquors of any kind whatsoever." A similar charge founded on the same transaction was prosecuted against George Findling, the two cases, by agreement, were tried together in the circuit court of Adair county and each defendant was found guilty and fined three hundred dollars. Each appealed and the cases were submitted separately but as their facts and issues are identical, our decision in the Brown case will determine the Findling case and dispense with the necessity of writing a separate opinion therein.

Brown is an illiterate coal miner living at Novinger in Adair county who, during the winter of 1913-14, worked as a common laborer principally as teamster for a Mr. Sharp. Findling also is an ignorant laborer at Novinger and during that winter worked as teamster for a Mr. Novinger who was in the undertaking business. He can neither read nor write but can sign his name. Brown is devoid even of that limited accomplishment. Both men were temperate, industrious and law-abiding.

It appears from the evidence that in February, 1914, eighteen barrels of some kind of merchandise arrived at the railroad station at Worthington consigned and marked to the "City Drug Store of Worthington." The State claims that these barrels contained bottled beer but they bore no external evidence of the nature of their contents and were tightly coopered. A board in the head of one of the barrels had been broken in transportation disclosing that its contents were packed

in straw. Sharp and Novinger directed their teamsters —the defendants—to drive in two wagons to Worthington and haul freight from the station to Connellsville, a nearby town, without informing them of the character of the freight and gave Brown a letter to the station agent which authorized him to deliver the barrels to them. Defendants delivered the letter to the agent on their arrival at Worthington and the latter pointed out the eighteen barrels as the freight they were to haul. They loaded nine barrels in each wagon, the barrel with the broken head being placed in Findling's wagon, and then started to drive to Connellsville. Two deputy sheriffs stopped them on the road and one of them reached into the broken barrel and extracted a package which was concealed beneath the straw covering. The package was found to contain a quart beer bottle bearing a brewery label. The officers made no further inspection of the barrels but placed defendants under arrest and the party proceeded to Connellsville.

Considering the opportunity the officers had for ascertaining and making full and satisfactory proof of the contents and ultimate destination of the barrels, the evidence of the State is most meager and unsatisfactory, but for present purposes we shall concede that it is sufficient to support the charge that the barrels contained bottled beer which the consignee, whoever he was, intended to sell in violation of the Local Option Law. On this hypothesis the question arises whether or not these teamsters, if they had known the barrels were loaded with beer, were guilty of a violation of the statute which prescribed that no person "shall keep, store or deliver for or to another person" intoxicating liquors in local option territory.

The law further provides that nothing in that statute "shall be construed to prohibit any person from ordering liquor for his own or family use, where such liquor is sent direct to the person using the same," (Sec. 7228, R. S. 1909) but that provision, of course,

could not apply to a case where the liquor, though consigned to the person ordering it, is not intended for the consumption of himself or his family, but is known by the person charged with its delivery to have been purchased and imported for an unlawful purpose. If defendants knew before their arrest that the barrels contained beer which was being brought into the county for such unlawful purpose, their possession during the transportation from the railroad station to Connellsville was not "storing" or "delivering" within the meaning of those statutory terms, but was a "keeping" of the property within the purview of the statute. [State v. Burns, 237 Mo. 216.] The court says in that case that possession with intent to deliver for an unlawful purpose, during every moment thereof, is "keeping it, under our construction of the statute."

In State v. Rawlings, 232 Mo. 544, it was held that a possession by a messenger for only five minutes would be "keeping" the liquor, within the terms of the statute, where an intent to deliver for an unlawful purpose accompanied such possession.

Defendants, at the time of their arrest, being in possession of the beer, not as common cariers, but as servants of the purchaser, were "keeping it" within the prohibition of the statute, providing they knew that what they were transporting and intending to deliver to their employers was beer, imported into the county for the purpose of being disposed of in violation of the Local Option Law. The vital defect in the evidence adduced by the State is that it leaves the inference of such knowledge and consequent criminal intent wholly in the field of suspicion and conjecture, without any evidentiary support. Guilty intent is the essence of crime, and it devolved upon the State to prove the existence of such intent on the part of the accused.

Such proof might consist entirely of circumstan-tial evidence but to be sufficient, it had to be of such character as to leave no room for a reasonable doubt that defendants knew they were hauling beer and were intending to deliver it in aid of a violation of law. Beyond the bare facts that they were apprehended while in the act of hauling eighteen innocent-looking barrels which held, but effectively concealed, bottled beer, there is no proof that these two ignorant team-sters knew they were aiding in the commission of a criminal offense, and this was not sufficient evidence to take the issue of intent to the jury. The testimony of one of the deputy sheriffs that on their arrival at Con-nellsville Findling remarked "this is my first load of beer to haul and my last load" is as consistent with in-nocence as with guilt, since it does not militate against the assertion of defendants that they had no knowl-edge of the contents of the barrels before their arrest.

The cases should not have been submitted to the jury. The judgment is reversed.

All concur.