STATE OF MISSOURI, Respondent, v. J. P. RICH-ARDSON, Appellant.

Kansas City Court of Appeals, January 17, 1916.

1. INDICTMENTS AND INFORMATIONS: Local Option Law. The defendant, who was the superintendent of a storage house for intoxicating liquors located in Vernon county, Missouri, was indicted for violating the Local Option Law in that he sold and delivered beer in Kansas, the warehouse being in Missouri close to the State line. *Held*, that the defendant was merely the servant of the brewer performing duties the latter was lawfully entitled to have performed and since the master was not breaking the law by the hand of his servant, neither was the servant breaking it.

2. ———: ———: Statute. Section 7227, Revised Statutes, 1909, does not denounce any and all keeping and storing of intoxicants in prohibition counties, but only the keeping and storing for another person, nor does it denounce all deliveries of intoxicants but only those to another person in local option counties.

Appeal from Vernon Circuit Court.—*Hon. B. G. Thurmond*, Judge.

REVERSED.

*Arthur A. O'Brien* and *Cowherd, Ingraham, Durham & Morse* for appellant.

*J. Rusk Blevans* and *J. M. Hull* for respondent.

JOHNSON, J.—Defendant was tried and convicted in the circuit court of Vernon county under an information alleging that in violation of the Local

Option Law which was adopted in Vernon county, defendant "on the —— day of September, 1914, and ever since the said 16th day of September, 1913, and at all times hereinafter mentioned . . . did then and there wilfully and unlawfully keep, store for and deliver to another person . . . , to-wit, for and to divers and sundry persons to the prosecuting attorney unknown, certain intoxicating liquors to-wit, one carload of beer," etc.

It was agreed at the trial that what is known as local option, i. e., prohibition, was in force in Vernon county during the period alleged in the information and it is conceded that, as an employee of Fred Bersnok, defendant was in charge of a warehouse owned and occupied by a Kansas City brewing company as a depot for the storage of beer deposited there by the company to fill orders it received by mail from consumers in Bourbon county, Kansas, which lies immediately west of Vernon county. The warehouse was on the Missouri side of the State line and deliveries therefrom into Bourbon county were made by wagon. This depot for the storage and distribution of beer was operated under the terms of a written contract between the brewery and Bersnok which provided that in consideration of a commission of fifty cents per dozen bottles and twenty-five cents per dozen half bottles "of all beer delivered through him" Bersnok would "take charge of and provide suitable custodians for such storage depot," would "unload cars shipped by the Breweries Company and store contents in said building, and upon receipt of delivery orders from the Breweries Company make from day to day delivery upon such orders to the customers of the Brewery in Bourbon county, Kansas."

The contract forbade Bersnok selling or permitting the sale of beer in Missouri or violating or permitting the violation of any law in or about the premises. The

evidence shows that defendant, who was the custodian of the depot employed by Bersnok pursuant to this contract, performed the duties of receiving and storing the beer shipped to that depot by the brewery; and of receiving and filling orders sent through the mails from postoffices in Bourbon county, either to the company at Kansas City, or addressed to "Fred Bersnok, agent, The Kansas City Breweries Company, Eve, Vernon County, Missouri." Defendant did not accept or fill any other orders than those coming through such channels and made no deliveries at the warehouse or in any other way than by delivery wagon which hauled the beer from the warehouse over the line into Kansas. There was a carload or more of beer in storage when defendant was arrested and the business we have described was in full operation at that time.

It is apparent that this depot was, in fact, a branch business house maintained by the company for the purpose of facilitating the transaction of its mail order business with residents of Bourbon county, Kansas. It was intended to be, and, in fact, was headquarters for the transaction of all such business and no beer was sent and stored there that was not intended for sale and delivery to Bourbon county consumers. Defendant was the agent of the company, the proprietor of the business, and his duties were not only those of a custodian in possession of the stock, but also those of a superintendent of the business carried on there. It was not intended that any of the beer stored there should be returned to the brewery but all was to be delivered in Kansas, and so far as the evidence discloses, or even intimates, the business, in fact, was conducted in good faith to serve this single purpose and not in part as secret headquarters for carrying on an unlawful business of making sales and deliveries to consumers in Vernon county. Of course there is always a possibility and, we might safely add, an

ever present danger that beer kept in storage in local option territory for distribution to foreign consumers may leak and flow through forbidden channels, and it is argued by counsel for the State that regardless of whether or not such mishaps occurred during the management of the depot and business by defendant, the likelihood of, the perversion of such places to unlawful uses was anticipated and effectually guarded against in the act passed by the Legislature in 1907 (Laws, 1907, page 231, *et seq.*), entitled ''An Act to prohibit persons running order houses from delivering intoxicating liquors to persons having no license to deal in same and to prohibit the keeping, storing for, or delivering to another person intoxicating liquors in local option counties,'' etc.

The precise offense charged against defendant thus is defined in section 2 of that Act (now Sec. 7227, R. S. 1909): ''No person shall keep, store or deliver for or to another person, in any county that has adopted or may hereafter adopt the Local Option Law, any intoxicating liquors of any kind whatever.'' This language is plain and unambiguous and should be interpreted according to its natural, reasonable meaning and, as far as rational interpretation will permit, to give effect to the principles and objects of the policy of our local option statutes. [State v. Robinson, 163 Mo. App. l. c. 227.] But it is a penal statute and no offense may be read into it by intendment or implication. If its language does not clearly prohibit acts of the character of that under consideration the courts should not attempt to rectify any deficiency, real or supposed, by judicial legislation.

The case before us may be resolved into this question: Does the statute prohibit a manufacturer of beer or other intoxicating liquors from maintaining a branch house in a local option county for the storage of its product and the delivery thereof only to con-

sumers residing in Kansas, such deliveries being made only in the latter State?

The authority of the Legislature to regulate or prohibit that sort of traffic in intoxicants will be conceded as a part of the police power of the State, the exercise of which in nowise would infringe upon the jurisdiction of Congress over the subject of interstate commerce. [State v. Fitzpatrick, 11 Atl. Rep. 767 (R. I.).] But we fail to find in the statute any intent to exercise such authority. Of course if defendant kept, stored or delivered beer in Vernon county in violation of the Local Option Law, the fact that he acted as the agent of his company, his employer, would not excuse him from liability as a law-breaker. In the recent case of State v. Brown, 188 Mo. App. l. c. 251, following State v. Burns, 237 Mo. 216, and State v. Rawlings, 232 Mo. 544, we held that a teamster hauling beer in a local option county to his employer, the purchaser, who was importing it into the county for the purpose of selling it in violation of the Local Option Law, would be guilty of "keeping it" within the prohibition of the statute if he had knowledge that he was hauling beer intended for such distribution. But in the present case the beer was not kept or stored in Vernon county for sale or delivery in that county. The statute does not denounce any and all keeping and storing of intoxicants in prohibition counties, but only keeping and storing for another person, nor does it denounce all deliveries of intoxicants but only those to another person "in any county that has adopted . . . the Local Option Law." There is nothing in its language or in the interpretation thereof to be found in the reported cases expressing the legislative intention to prohibit a manufacturer of intoxicants, such as a brewer or distiller, from merely keeping or storing his product in local option territory. If the Legisla-

192 App. 28.

ture had meant that it would have said so in the statute and not have restricted the scope of the proscribed offense to the act of storing "for another person" which, translated, must mean keeping or storing with intent to deliver to another person or persons in local option territory in violation of the Local Option Laws. Keeping or storing for the sole purpose of making deliveries to consumers in other territory is not referred to in the statute which, as shown, in relation to deliveries expressly restricts its operation to deliveries "in any county that has adopted or may hereafter adopt the Local Option Law." Bourbon county, Kansas, though in a prohibition State, not being a local option county in this State, does not fall within the territorial area in which the statute prohibits deliveries to consumers of intoxicating liquors kept or stored in a local option county.

The statute no more applies to such keeping, storing and delivering than it would to keeping and storing solely for the export trade of the manufacturer with foreign countries, or to the "keeping" of a common carrier transporting a shipment of liquor across a local option county. As far as the present inquiry is concerned defendant was merely the servant of the brewer performing duties the latter was lawfully entitled to have performed and since the master was not breaking the law by the hand of his servant, neither was the servant breaking it.

The judgment is reversed. All concur.