PABST BREWING COMPANY, RESPONDENT, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, ET AL., APPELLANTS.*

Kansas City Court of Appeals.   May 25, 1925.

---

*Corpus Juris-Cyc References: Carriers, 10CJ, p. 543, n. 82; Evidence, 23CJ, p. 50, n. 59.

*Ringalsky, Friedman & Boatwright* for respondent.

*Fred S. Hudson* for C. M. & St. P. Ry. Co.

*Watson, Gage & Ess* for So. Pac. R. Co.

BLAND, J.—This is an action for damages suffered by plaintiff on account of the failure of defendants to deliver at Globe, Arizona, a carload of Pablo accepted by the defendants for transportation to that point. At the conclusion of all the testimony the court instructed the jury to find for plaintiff, leaving only the amount of the verdict to be determined by them. Defendants have appealed.

This case was here before. [See Pabst Brewing Company v. Chicago, Milwaukee & St. Paul Ry. Co., et al., No. 13441.] The former trial resulted in a verdict for the defendants which, however, was set aside by the trial court and defendants appealed. This court reversed and remanded the case with instructions to the trial court to reinstate the verdict for defendants. It was held in that appeal that as a matter of law defendants were deceived by the appearance of the shipment but the opinion was never published for the reason that it was quashed, at least in part, by the Supreme Court. [See State ex rel. v. Ellison, 286 Mo. 225.]

The facts show that plaintiff was a brewery located in the City of Milwaukee, Wisconsin, and had been largely engaged in brewing beer and shipping it to customers throughout the country; that it was and had been making real alcoholic beer for nearly seventy-five years; that only in the last three or four years prior to the time of the shipment of the beverage in question did it manufacture what is known and called "Pablo." On January 31, 1916, it delivered to defendant, Chicago, Milwaukee & St. Paul Railway Company, 170 half barrels of Pablo to be shipped to Globe, Arizona. The bill of lading was made out by plaintiff and recited that the shipment contained "170 half barrels of Pablo, an unfermented, carbonated, non-alcoholic beverage;" that the Milwaukee Railroad had received the property described in it, "contents and condition of contents of packages unknown." The car containing the beverage was delivered at El Paso, Texas, to the connecting carrier, the defendant, Southern Pacific Company, and transported by that company to Lordsburg, N. M., the last station in New Mexico before that railroad crossed into the State of Arizona. The Southern Pacific refused to carry the

car into Arizona, claiming that to do so would violate the Constitution of the State of Arizona relating to the introduction into that State of certain beverages, including beer and intoxicating liquors.

Defendants' refusal to carry the shipment resulted, after a period of five months, in an agreement between plaintiff and the Southern Pacific Company that the latter empty the beverage and return the cooperage to plaintiff, all to be done without prejudice to the rights of the parties. The beverage remained in Lordsburg from February 4th to March 3rd. No account is given as to what happened to it between those dates. Defendants' witness, Brinley, stated that he placed locks upon the car on March 3rd and attended to the icing of the car between that day and June 17th, and kept possession of the keys. He did not testify as to what amount of ice was put in the car or at what temperature the car was maintained. On June 17th Brinley turned the keys over to one Reardon, an employee of the defendant, Southern Pacific Company, who in company with two other employees of said defendant opened the car and took out a half barrel of the beverage and delivered it to Dr. Meserve of Tucson, Arizona. Dr. Meserve testified that he was a chemist in the employ of the State of Arizona; that he received the keg of beverage from Reardon and, on the same day, after noting that it was thoroughly chilled, opened it and made an analysis of its contents and found that the beverage contained 0.726 per cent of alcohol by volume. When the liquid was opened "it looked like beer, foamed like beer and smelled like beer."

Plaintiff introduced the testimony of the agent of the Milwaukee Railway Company at Milwaukee who testified that the company did not accept shipments of Pablo for transportation unless the bill of lading was accompanied by an affidavit of a disinterested chemist stating what the Pablo contained and that the liquid tendered was a non-alcoholic, unfermented, carbonated beverage. The witness further testified that a waybill, which was introduced in evidence in connection with his testimony, accompanied the shipment and that it bore on its face the information that the shipment consisted of "170 ½ Bbl. Pablo Carbonated Beverage non-alcoholic" and that the shipment was perishable. He further testified that the affidavit, which the witness identified, was attached to the waybill and that the waybill was supposed to accompany the shipment to destination.

Defendants offered the testimony of plaintiff's brew master and chemist, who testified that Pablo was made in plaintiff's brewery at Milwaukee; that the same equipment for manufacturing beer was used, in part, in the manufacture of Pablo; they testified, however, that neither malt nor yeast was used in the manufacture of Pablo; that there was no process of fermentation; that Pablo contained no alcohol; that it was a non-intoxicating unfermented beverage that

Pablo was a perishable liquid; that if it was not kept at the proper temperature, it would spoil and become unfit for beverage purposes; that when it became spoiled it usually created a certain amount of alcohol but it could be kept from spoiling for as long as three months if maintained at the proper temperature. There was other evidence that the proper temperature in which to keep Pablo was between thirty-four and forty degrees Fahrenheit.

Plaintiff's chemist testified that if Pablo was not kept properly iced, it would spoil and there would be "not only the alcohol germ developing but others developing at the same time, which would influence the odor to such an extent that it would have to be termed spoiled. It would be repulsive, you might say, an odor produced by lactic or acetic acids, alcohol and product of other fungi, that is not very agreeable." That the odor of Pablo in a good condition is entirely different from that of beer; that the color would be similar and that it would foam similarly to beer.

The keg of beverage opened on June 19th had pasted over its bung hole and attached to the keg by cleats a United States internal revenue stamp labeled "beer" and was stamped with the words "Pabst Brewing Company." It was brought out from defendants' witnesses that the government authorities at the time in question would not permit a brewery to ship any beverage in regular beer kegs without paying the regular government revenue for beer and having revenue stamps placed on them such as those attached to the shipment in question. Beer kegs were not required for shipment of Pablo. It could have been shipped in bottles or other suitable containers. The Constitution of the State of Arizona, which is in evidence, provided:

"Ardent spirits, ale, beer, wine or intoxicating liquor or liquors, of whatever kind, shall not be manufactured in or introduced into the State of Arizona, under any pretense. Every person who sells, exchanges, gives, barters or disposes of any ardent spirits, ale, beer, wine or intoxicating liquor of any kind, to any person in the State of Arizona, or who manufactures or introduces into, or attempts to introduce into the State of Arizona, any ardent spirits, ale, beer, wine or intoxicating liquor, of any kind, shall be guilty of a misdemeanor."

A letter was introduced in evidence, written to plaintiff by the agent of the Southern Pacific Company, at Lordsburg, stating that the shipment was being held *in transit* "on account of the Arizona prohibition law, waiting decision of the court."

Defendants insist that the court erred in peremptorily instructing the jury to find for the plaintiff. We think this point is well taken. While Pablo as described by the brew master and chemist was not beer under the provisions of the Arizona Constitution which we have quoted supra (Brown v. State, 152 Pac. 578), there was some slight testimony of probative value that the car of beverage shipped was beer.

The testimony of the witnesses who saw the liquid that was opened by Dr. Meserve, together with his testimony, was sufficient evidence to go to the jury upon that question.

But plaintiff insists that the evidence shows that there had been a change in the beverage from the time it arrived at Lordsburg and at the time it was opened and examined by Dr. Meserve; that there was a failure to show whether the car had been iced from February 4 to March 3 or what happened to it, and whether it had been properly iced from March 3 to June 17, and whether it was iced at all from June 17 to June 19. The presence of the unbroken revenue stamp over the bung hole was some evidence that the keg had not been tampered with since it left plaintiff's hands. Dr. Meserve testified that when he opened the keg it was thoroughly chilled. However, assuming there was no direct evidence that the beverage was properly iced, and for that matter, iced at all, from the time it arrived in Lordsburg until it was opened by Dr. Meserve, still there is an inference from the testimony that the liquid was not a beverage that the brew master and chemist described as Pablo. The chemist testified that while spoiled Pablo might contain .72 per cent alcohol that in such a state it would be repulsive; that it would have a disagreeable odor. He also testified that the odor of good Pablo was different from that of beer. The testimony was that the beverage examined on June 19 "looked like beer, foamed like beer and smelled like beer." There is a clear inference from this testimony that if it smelled like beer, it was not spoiled Pablo. The chemist testified that the odor of good Pablo was different from that of beer, the inference is that when Dr. Meserve examined the beverage it was neither good nor spoiled Pablo but beer, and as the brew master and chemist further testified that beer itself would spoil within a few months unless iced, there is an inference that the beverage shipped was beer and that it had been properly iced and preserved until the time it was examined by Dr. Meserve. For these reasons the court erred in directing a verdict for plaintiff. [State ex rel. Brewing Co. v. Ellison, supra, l. c. 233; Gannon v. Laclede Gas Light Co., 145 Mo. 502.]

This court in the former appeal held that the question as to whether the beverage was beer or not was one for the jury, and that part of the opinion was not quashed. [See State ex rel. v. Ellison, supra, l. c. 233, 234.] The evidence in the two appeals is the same except the testimony of the agent of the Milwaukee Railway at Milwaukee, which does not change the situation so far as the question of a demurrer to the evidence is concerned. [Steamboat Missouri v. Webb, 9 Mo. 193.]

We do not think there is any defense to this case on the ground that defendants were deceived by the appearance of the shipment for the reason that the defendants had the same information as to the con-

tents of the shipment at the time it reached Lordsburg as they did when they received it, and if they received the shipment with such information, they could not upon the same evidence say that they were deceived by the appearance of the shipment thereafter, or when it reached Lordsburg.

However, plaintiff insists that it was not unlawful to introduce beer into Arizona at the time in question, and, therefore, the court properly directed a verdict for plaintiff. In support of this plaintiff cites the case of Sturgeon v. State, 154 Pac. 1050, 1055 (Arizona) where it was said:

"It not being unlawful in the State of Arizona to have or personally use intoxicating liquors, its introduction into the State for *personal* use is not prohibited by the Webb-Kenyon Act, and the prohibition amendment, in so far as it attempts to interdict its shipment, transportation, or introduction into the State for lawful purpose, is ineffectual as an attempt to regulate interstate commerce. It follows that the lower court committed error in refusing appellant's offer of evidence to show that he had brought the liquor into the State for his personal use."

And at page 1056 of the opinion it is said:

". . . Any one bringing intoxicating liquor into Arizona from outside the limits of the State does so at his peril. Whether he subjects himself to punishment or not depends on the use to which the intoxicating liquor is intended to be put. If the jury, under appropriate instructions as to what use would be a violation of the law of this State, are convinced beyond a reasonable doubt from all the evidence and circumstances in the case that such intoxicating liquor is intended by any person interested therein to be 'received, possessed, sold, or in any manner used' in violation of any law of Arizona, it would be their duty to convict. If the use intended violates no law of this State, then no offense has been committed."

If the shipment was beer and the defendants had taken it into Arizona and had been prosecuted for introducing beer into the State, the burden would have been upon them to show that the person to whom the beer was shipped was having it sent to him for his personal use. [Sturgeon v. State, supra.] The consignee in this shipment was the "Dealers Ice & Cold Storage Company." The testimony of plaintiff's witness, Coleman, that the Dealers Ice & Cold Storage Company bought the beverage of plaintiff at an agreed price mentioned by the witness, is some evidence that it was not being shipped for the personal use of some one in Arizona, an inference arising that the beverage was for the use of that company.

It is held in this State that in order to convict a person for merely carrying prohibited liquor into dry territory where it could have been used there for a lawful purpose, it must be shown that the defendant had knowledge of the fact that it was to be put to an unlaw-

ful use. [State v. Brown, 188 Mo. App. 248; State v. Richardson, 182 S. W. 782; State v. Bunker, 206 S. W. 399; State v. Burns, 237 Mo. 216; State v. Rawlings, 232 Mo. 544.] However, there is respectable authority to the contrary (see Commonwealth v. Mixer, 207 Mass. 141). But even under the Missouri rule the knowledge of the unlawful use may be inferred from circumstances. [Adams Express Co. v. Commonwealth (Ky.), 112 S. W. 577.] It would, therefore, appear that there is sufficient evidence in the record before us upon which to base a conviction of defendant Southern Pacific Company under the Arizona Constitution, had it taken the beverage into the State of Arizona.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.

## On Motion for a Rehearing.

BLAND, J.—The defense in this case has always been (1) that Pablo was beer under the meaning of the Constitution of Arizona, and (2) that if it was not beer, its appearance deceived defendants into thinking that it was beer. Some confusion has arisen as to whether we meant to say in the foregoing opinion that there was evidence that the beverage was beer and not Pablo or whether it was Pablo and that Pablo is beer. In this connection plaintiff contends that defendants are bound by the testimony of plaintiff's brew master and chemist, put on the stand by them, to the effect that Pablo is not beer. Our opinion may not be as plain as it should be on the point. However, we were of the belief that defendants were not bound by the testimony of said witnesses in view of the evidence that tended to contradict them and undoubtedly this is the law. [Frankel v. Hudson, 271 Mo. 495, 503; Dinstore v. St. Louis, 192 Mo. 255; Brannock v. Railroad, 147 Mo. App. 301, 320, 322.] In the opinion we had this rule in mind when we said "while Pablo *as described by the brew master and chemist* was not beer . . . there was some slight testimony . . . that the car of beverage shipped was beer" and "there is an inference from the testimony that the liquid was not a beverage that the *brew master and chemist described as Pablo.*" We intended to be careful not to say that what the chemist and brew master described as Pablo was in fact Pablo. What we meant to say was that there was evidence that the Pablo examined by Dr. Meserve was beer and was not either good or spoiled Pablo such as the chemist and brew master testified to as Pablo.

The defendant, Southern Pacific Company, has filed a motion to modify the opinion to such an extent as to allow it to interpose the defense of deceptive appearance of the shipment, contending that it is not bound by the knowledge of the defendant, Chicago, Milwaukee & St. Paul Railway Company, as to the appearance of the ship-

ment when the latter received it. There exists authority to the effect that in forwarding goods over the line of a connecting carrier the initial carrier acts as agent of the consignor and if this rule is to be applied, the knowledge coming to the initial carrier in making the contract of carriage would not be knowledge of the connecting carrier, but the weight of authority is that in forwarding the goods the connecting carrier is the agent of the initial carrier and in making the contract of carriage the initial carrier is the agent of the carrier undertaking to complete the carriage. [Halliday v. Railway, 74 Mo. 159, 163; Cobb v. Brown, 193 Fed. 958; Hachadoorian v. Railroad, 112 N. Y. Supp. 660; Alcorn v. Express Co., 148 Ky. 352, 354, 355, 356; Ill. Cent. R. R. Co. v. Curry, 127 Ky. 643, 649; B. & O. Southwestern Rd. Co. v. Clift, 142 Ky. 573, 576; Nashville, etc., Rd. v. Carrico, 95 Ky. 489, 491; 10 C. J., p. 543.] So defendant, Southern Pacific Company, is undoubtedly bound by the knowledge obtained by the initial carrier, Chicago, Milwaukee & St. Paul Rd. Co. in making the contract of carriage.

The motions for a rehearing and to modify are overruled.