STATE OF MISSOURI at the relation of MISSOURI PORTLAND CEMENT COMPANY, a Corporation, Relator, v. FORREST SMITH, State Auditor.—90 S. W. (2d) 405.

Court en Banc, February 4, 1936.

*John W. Mather* for relator.

410

*Roy McKittrick,* Attorney General, *John W. Hoffman, Jr.,* and *Olliver W. Nolen,* Assistant Attorneys General, and *John H. Hendren* for respondent.

LEEDY, J.—Original proceeding in mandamus to compel respondent, the State Auditor, to audit an invoice or bill for forty tons of road sand purchased by Missouri Highway Commission from relator. Upon the filing of relator's petition, respondent waived the issuance and service of our alternative writ, accepted said petition as and for such writ, and made return thereto. Whereupon relator filed what is denominated a "motion for judgment notwithstanding respondent's return." The facts are not in dispute, and the issues made by the pleadings are issues of law. The road sand mentioned was purchased at retail for the agreed price of Eighteen Dollars ($18.00), and was for the use and consumption of said Highway Commission in the construction and maintenance of certain State highways. Respondent's refusal to draw his warrant is based on the admitted fact that relator did not add to the agreed purchase price of said sand an amount equivalent to one per cent thereof as a sales tax. The sole question involved is whether sales to the State Highway Commission of tangible personal property at retail are subject to the one per cent tax imposed by the provisions of the Emergency Revenue Act of 1935. [Laws 1935, p. 411.]

The Attorney General appears as one of the attorneys of record for respondent. Prior to the institution of this proceeding he had

given an opinion in writing to the Highway Commission holding its purchases not subject to the tax. His separate brief and argument filed herein supports that position, and his representation of respondent is merely nominal, except as to an attack made under Article X, Section 6 of the Constitution of Missouri—an issue raised by amendment after submission of the cause. The contentions of the respondent are supported by a separate brief and argument filed in his behalf by other counsel.

The act in question expressly repeals an earlier sales tax act, passed at the Extra Session of the Fifty-seventh General Assembly, and approved January 15, 1934 (Laws, Ex. Sess., 1933-34, pp. 155, 166) which imposed a tax upon the privilege of engaging in the business of selling tangible personal property at retail, and upon the privilege of engaging in the business of selling certain services, substances, and things, etc., Section 2 of the present act, insofar as here applicable, provides: "From and after the effective date of this Act and up to and including December 31, 1937, there shall be and is hereby levied and imposed and there shall be collected and paid: (a) Upon every retail sale in this state of tangible personal property a tax equivalent to one (1) per cent of the purchase price paid or charged. . . ." By paragraph or subsection (e) of Section 1, "sale at retail" is defined to mean "any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption, and not for resale in any form as tangible personal property, for a valuable consideration."

Unlike its predecessor, the act in question imposes the tax directly upon the "sale, service or transaction," and requires the seller to collect the tax from the purchaser (or recipient of the service) and prohibits the seller from absorbing or refunding the same. Section 5 reads as follows: "Every person receiving any payment or consideration upon the sale of property or rendering of service subject to the tax imposed by the provisions of this act, or required to make collection of the tax imposed by the provisions of this act, shall be responsible not only for the collection of the amount of the tax imposed on said sale or service but shall, on or before the 15th day of each month, make a return to the State Auditor of all taxes collected for the preceding month or required to be collected for the preceding month, and shall remit the taxes so collected or required to be collected to the State Auditor. The seller of any property or person rendering any service, subject to the tax imposed by this act is directed to collect the tax from the purchaser of such property or the recipient of the service as the case may be. The tax imposed by this act is a tax upon the sale, service or transaction and shall be collected by the person making the sale or rendering the service at the time of making or rendering such sale, service or transaction.

It shall be unlawful for any person to advertise or hold out or state to the public or to any customer directly or indirectly, that the tax or any part thereof imposed by this act, and required to be collected by him, will be assumed or absorbed by the person or that it will not be added to the selling price of the property sold or service rendered, or if added that it or any part thereof will be refunded. Any person violating any of the provisions of this section shall be guilty of a misdemeanor.'' By Section 42, all sections of the act are declared dependent upon Section 5, the other parts of the act being separable.

Relator's position is that the statute is inapplicable to purchases made by the Highway Commission, and if interpreted to require payment of the tax, the act must be held unconstitutional within the purview of that portion of Article X, Section 6, of the Constitution of Missouri which provides, ''The property, real and personal, of the State, counties and other municipal corporations and cemeteries, shall be exempt from taxation.'' Also that the act undertakes to impose and levy a tax against the property of the State contrary to Section 9743, Revised Statutes 1929, which provides, ''The following subjects are exempt from taxation: . . . third, lands and other property belonging to this state.''

It is elementary that the power of the Legislature in matters of taxation for public purposes is unlimited, except insofar as restrained by the State or Federal Constitution, or inherent limitations on the power to tax. [1 Cooley on Taxation (4 Ed.), sec. 69, p. 171.] It has been said that taxes fall naturally into three classes, namely, capitation or poll taxes, taxes on property, and excises. ''Excises, in their original sense, were something cut off from the price paid on a sale of goods, as a contribution to the support of government. The word however has come to have a broader meaning and includes every form of taxation which is not a burden laid directly upon persons or property; in other words, excises include every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation.'' [26 R. C. L., sec. 18, p. 34.] The same text, in pointing out the distinction to be drawn between property taxes and excise taxes, says ''If a tax is imposed directly by the Legislature without assessment, and its sum is measured by the amount of business done or the extent to which the conferred privileges have been enjoyed or exercised by the taxpayer irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise.'' [26 R. C. L., sec. 19, p. 35.] 1 Cooley on Taxation (4 Ed.), section 42, page 127, defines excises as ''taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges.'' Under these general definitions of the term, as well as upon

the authority of the many adjudicated cases, we think it so clear as not to be open to question that the tax in controversy is an excise, and not a property tax. [See Independent School District v. Pfost, 51 Idaho, 240, 4 Pac. (2d) 893, 84 A. L. R. 820; Crockett v. Salt Lake County, 270 Pac. 142, 60 A. L. R. 867; Portland v. Kozer, 108 Ore. 375, 217 Pac. 833; Standard Oil Co. v. Brodie, 153 Ark. 114, 239 S. W. 753; Wiseman v. Phillips (Ark.), 84 S. W. (2d) 91; Pierce Oil Co. v. Hopkins, 282 Fed. 253; Monometer Oil Co. v. Johnson, 292 U. S. 86.] It will be observed that the exemptions granted by the Constitution and the statute, supra, are limited by express terms to the real and personal property of the several bodies mentioned. Accordingly, Article X, Section 6 of the Constitution has been held to have no application to collateral inheritance taxes (State ex rel. v. Henderson, 160 Mo. 190, 60 S. W. 1093), nor to license fees (State v. Distilling Co., 236 Mo. 219, 139 S. W. 453). And we think in this instance the statute does not impinge upon the constitutional provision pointed out, nor violate the statute relied on, and is valid.

We pass now to the question of the intent of the Legislature with respect to imposing a tax on sales or transactions wherein a subordinate branch of the executive department (which the highway department was held to be in State ex rel. v. Hackmann, 314 Mo. 33, 282 S. W. 1007) becomes the purchaser. Respondent invokes the rule that exemption from property taxes does not extend to excise taxes, and asserts the language of the act itself, together with the record of the General Assembly in considering this particular legislation, evinces a legislative intent to impose the tax upon such agencies. The weight of authority seems to be that, as applied to counties, municipalities and other subdivisions, exemption from property taxes does not *ordinarily* extend to excise taxes. [See Independent School District v. Pfost, and other cases cited, supra.] But the rule is not absolute, and is dependent upon the circumstances of each case. [26 R. C. L., sec. 276, p. 315.]

It is insisted that subsection (a) of Section 2, which imposes a tax "upon every retail sale in this state of tangible personal property," when taken in connection with Sections 3 and 45 (the exemption sections) manifests an intent to bring the State and its agencies within the operation of the statute. Sections 3 and 45 are, respectively, as follows: "Section 3—There are hereby specifically exempted from the provisions of this act and from the computation of the tax levied, assessed or payable under this act, such portion of the gross receipts as is derived from commerce between this state and other states of the United States, or between this State and foreign countries, or which the State of Missouri is prohibited from taxing under the Constitution or Laws of the United States of America, and such portion of the gross receipts as is derived from sales of

tangible personal property, services, substances and things which the General Assembly of the State of Missouri is prohibited from taxing or further taxing under the Constitution of this state." "Section 45—In addition to the exemptions under Section 3 of this act there shall also be exempted from the provisions of this act all sales made by religious, charitable and/or Eleemosynary Institutions, in the conduct of the regular religious, charitable and/or Eleemosynary functions and activities."

Furthermore, it is argued that Senate Resolution No. 53 shows that it was the intention to "raise a vast sum of money for certain specific and highly important purposes; and this further explains the language of the act which places the tax upon *every* sale, save and except only such sales as the Legislature is prohibited from taxing or further taxing." The resolution reads as follows:

"Whereas, in the discussion of the Sales Tax Bill known as House Bill No. 198, there has arisen many differences of opinion among the members of the Senate as to how much revenue this General Assembly should provide for relief and old age pensions, and whether or not revenue should be provided to shift a part of the cost of the insane patients from the counties to the State as provided for by Senate Bill No. 13, and whether or not the interest on the building bonds should be paid out of the general revenue; therefore, be it

"Resolved, That it is the sense of the Senate that this General Assembly should pass a Sales Tax Law which will provide sufficient revenue which revenue added to the revenue from other sources will pay the following amounts for the following purposes:

"1. For relief for the years 1935 and 1936 the sum of Six Million Dollars ($6,000,000). Said amount to be expended under the direction of the Governor and not more than the sum of Five Hundred Thousand Dollars ($500,000) shall be expended during any one month.

"2. For old age pensions for the years 1935 and 1936 the sum of Two Million Five Hundred Thousand Dollars ($2,500,000).

"3. That no appropriations shall be made for the years 1935 and 1936 to carry out the provisions of Senate Bill No. 13, and that the Governor be requested to veto said bill.

"4. That the interest on the building bonds for the years 1935 and 1936 in the approximate sum of Six Hundred Twenty-two Thousand Dollars ($622,000) shall not be paid out of the general revenue of the State.

"5. That it is understood that one-third of the ordinary revenue fund paid into the state treasury shall be set aside for the support of free public schools.

"6. That the Governor be requested to reduce the appropriations set out in the appropriation bills in accordance with the authority vested in him by law in such amounts as he may deem necessary to

the end that the above provisions for relief and old age pensions shall be carried out and provided for, and that the expenses of the State Government including the various departments and institutions shall be kept within the anticipated revenue provided for from all sources.''

Reference is also made to the emergency clause (which failed of adoption). This we have examined, but deem it unnecessary to set it out. [See Senate Journal, page 997.]

We do not think the language of the act, nor the record of the General Assembly in considering it may be said to have the effect ascribed to it by respondent. We are of the opinion that the language exempting ''only such sales as the Legislature is prohibited from taxing or further taxing'' is referable to that portion of Section 44a, Article IV of the Constitution, which prohibits, for a period of ten years after the adoption thereof, the General Assembly to ''levy and collect . . . state taxes on the sale or use of motor vehicle fuels in excess of the rates fixed by law at the time this amendment is adopted,'' except in certain contingencies not necessary to be noticed. Undoubtedly it was within the power of the Legislature to make the tax applicable to the State and its agencies. But the theory underlying the presumption that property belonging to the State is not taxable, i. e., that such taxation would merely be taking money out of one pocket and putting it into another, seems to us to have peculiar application here, notwithstanding the general rule hereinabove noticed with respect to the extent of the principle of exemptions. It must be remembered that the involved tax is levied and collected solely by and for the benefit of the State, and not by any municipality or other subdivision. The legislative journals show a purpose to devote the proceeds to specific purposes, namely, relief, old age pensions, care of the afflicted, and support of the public schools. It is an emergency measure, and expires by limitation on December 31, 1937. If chargeable to the State and its agencies of the kind in question, it would merely collect the amount thereof from itself, and then pay over to itself the amount so collected. The view that such was not intended is fortified by an examination of the appropriation acts of the Fifty-eighth General Assembly, which show that that body made no appropriations for such purpose. Nor do we think it a sufficient answer to that proposition to say that the sales tax becomes a component part of the purchase price.

From what has been said, it becomes unnecessary to determine the attack upon the constitutionality of the act as being in violation of Section 44a of Article IV of the Constitution. Peremptory writ awarded. All concur.