VICTOR P. PLOCH, Appellant, v. CITY OF ST. LOUIS, a Municipal Corporation, and FRED A. RENICK, License Collector of the City of St. Louis.—138 S. W. (2d) 1020.

Court en Banc, April 2, 1940.

1070

*Williams, Nelson & English* and *R. F. O'Bryen* for appellant.

*Edgar H. Wayman, Louis A. McKeown* and *Andrew J. Reis* for respondents.

1074

*Sam C. Blair, John McCleary, John J. Cosgrove* and *John J. Manning, Jr., amicus curiae* for Kansas City.

*Leslie A. Welch* and *Edgar J. Keating* for Leslie A. Welch and another.

GANTT, J.—Action to enjoin the enforcement of an ordinance taxing cigarette merchants located in the City of St. Louis. On demurrer the court ruled that the amended petition did not state a cause of action. Plaintiff refused to further plead. Judgment for defendants, and plaintiff appealed.

Plaintiff has been selling merchandise, including cigarettes, in the City of St. Louis for a number of years. He did so under the general merchants license ordinance, which required a license tax of $1.25 on each one thousand dollars of sales made during the year preceding the first Monday of June. He also paid an *ad valorem* tax of sixty-seven one-hundredths of one per cent of the value of the stock in his possession at any one time between the first Monday of March and the first Monday of June of each year.

The ordinance was approved June 8, 1939. It levied an annual registration fee of $1 expiring on the first Monday of July each

year, and a tax of $1 per thousand on cigarettes sold, offered, or displayed for sale at retail. The tax is collected by the sale of stamps to the merchant, who must place them on packages of cigarettes for sale. Merchants licensed under the general merchant license ordinance at the time of the effective date of the ordinance in question are entitled to receive credit upon the purchase of stamps in an amount to be determined, as provided in the ordinance. The general merchants license ordinance is authorized by Section 7596, Revised Statutes 1929, which follows:

"All such cities, for city and local purposes, are hereby authorized to license, tax and regulate the occupation of merchants . . . , and may graduate the amount of annual license imposed upon a merchant . . . in proportion to the sales made by such merchant . . . during the year next preceding any fixed date."

In this connection it should be stated that a reasonable classification may be authorized even though the subject isolated and classified, is, at the time, covered by a general law. [State ex rel. Daily Record Co. v. Hartman, 299 Mo. 410, 424, 253 S. W. 991.]

I. Plaintiff contends that the ordinance violates Section 53, sub-section 32, Article IV of the Constitution, which provides that "where a general law can be made applicable no local or special law shall be enacted." He argues that the isolation of cigarettes from other merchandise, including other forms of tobacco, for the purpose of taxing and regulating the sale of the same, is an arbitrary and unreasonable classification.

In all jurisdictions the cigarette has been a favored article for isolation and classification. The sale or gift of a cigarette is prohibited in some jurisdictions. It is not a "useful commodity." The nicotine is harmful. There is no question of classification. The harmful properties of the article do the classifying. In this jurisdiction we have criminal statutes as follows:

"Any person who shall, by himself, his servant or agents, or as the servant or agent of any other person, directly or indirectly, or upon any pretense, or by any devise, sell, give away or otherwise dispose of, to any person under the age of eighteen years, any cigarette, cigarette paper or cigarette wrappers, or any substitute thereof, or for the purpose of being filled with tobacco for smoking, shall be adjudged guilty of a misdemeanor." [Sec. 4270, R. S. 1929.]

"Every person, over the age of ten years and under the age of eighteen years, who shall smoke or use cigarettes on any public road, street, alley, park, or other lands used for public purposes, or in any public place of business or amusement, or upon any railroad train or street car, shall, upon conviction, be adjudged guilty of a misdemeanor and punished by a fine of not more than ten dollars." [Sec. 4271, R. S. 1929.]

Furthermore, it is common knowledge that the size and mildness.

of the cigarette tempt the young to indulgences which produce tobacco addicts. This justifies the isolation of cigarettes from other forms of tobacco. In some jurisdictions the sale of cigarettes is prohibited within certain distances of school houses. The taxation and regulation of the article is well illustrated in 62 American Law Reports 105. The ordinance is not a purely revenue measure, for the tax levied is such that it tends to diminish the use of the article. An occupation tax may be both a police regulation and a revenue measure. [Viquesney v. Kansas City, 305 Mo. 488, 497, 266 S. W. 700; Gundling v. Chicago, 177 U. S. 183, 188.] The classification is neither arbitrary nor unreasonable, the ordinance levies an occupation tax, and it does not violate the above named section of the Constitution.

Furthermore, the tax falls alike upon all retailers of cigarettes, and it is not an *ad valorem* tax. It follows that the ordinance does not violate the uniformity provisions of the Constitution, Sections 3 and 4, Article X. [St. Charles ex rel. v. Schulte, 305 Mo. 124, 129, 264 S. W. 654.]

Plaintiff cites City of Springfield v. Smith, 322 Mo. 1129, 19 S. W. (2d) 1. In that case an ordinance of the city prohibited theatre amusement on Sunday. Defendant challenged the ordinance as in violation of Section 53, sub-section 32, Article IV of the Constitution. We ruled the ordinance a special law for the reason it isolated theatrical exhibitions from other commercial amusements equally disturbing the day of rest. The case is not authority under the facts in the instant case.

II. Plaintiff also contends that the ordinance violates Sections 23 and 25 of Article IX of the Constitution which require city ordinances to be in harmony with the State law. In other words, he contends that the ordinance is prohibited by Sections 47 and 48 of the Sales Tax Act (Laws 1937, p. 568), which sections follow:

"No city, town or village, whether organized by general law or by special charter, shall, either directly or indirectly, levy, impose or collect any tax upon the sale of or charge for any tangible personal property taxed by the state under the provisions of this act, or, upon the sale of or charge for any service or other thing taxed by the state under the provisions of this Act." [Sec. 47.]

"Nothing contained in this Act shall prevent the levying or collecting by any city, town or village of any tax or license now authorized by any ordinance of such city, town, or village." [Sec. 48.]

He argues that Sections 47 and 48 repealed Section 7596, Revised Statutes 1929, authorizing cities of five hundred thousand inhabitants "to license, tax and regulate the occupation of merchants." The section (7596) is not mentioned in the act of 1937. If repealed, it is by implication. The City of St. Louis has been authorized to license,

tax and regulate the occupation of merchants for sixty years (Laws 1879, p. 141). Furthermore, all cities, towns and villages have for many years been authorized to license, tax and regulate the occupation of merchants. It is not conceivable that the Legislature, by the act of 1937, intended to withdraw said authority from cities, towns and villages. It intended no such absurdity. Furthermore, it was provided in the act of 1937 that said act would expire December 31, 1939. We do not think the Legislature intended the repeal of Section 7596 by any provision of this temporary enactment. The question is reduced to a consideration of Sections 47 and 48 of the act of 1937.

It is provided in Section 47 that "no city . . . shall, either directly or indirectly, levy . . . any tax upon the sale of . . . personal property taxed by the state under the provisions of this act." Furthermore, it is provided in Section 5 that the tax levied by the act is a "tax upon the sale," which must be collected by the merchant as the agent of the State. Furthermore, it is provided in Section 6 that the purchaser must pay the tax.

We agree with plaintiff that the words "tax upon the sale," as used in Section 47, mean the same as the words "tax upon the sale," as used in Section 5. If so, Section 47 only prohibits cities from levying a tax to be paid by the purchaser. In other words, Section 47 does not prohibit the occupation tax levied by the ordinance under consideration.

In this connection it should be stated that Section 48 is a cautionary provision. Plaintiff states that it was enacted at the instance of the city counselor of Kansas City to prevent the act from disturbing existing license ordinances of said city. The section in no way limits the authority of the city of St. Louis under Section 7596, Revised Statutes 1929.

The sections contain no word tending to show that the Legislature intended to take from cities authority to impose an occupation tax on merchants. The ordinance does not violate either Sections 23 or 25, Article IX of the Constitution, and the city was authorized by said Section 7596 to enact the ordinance.

■ III. Plaintiff contends that the ordinance violates the search and seizure clause of the State Constitution (Sec. 11, Art. 2) and the due process clauses of the State and Federal Constitutions.

(a) There is no provision in the ordinance for a search of the premises of the cigarette merchant. In aid of collection, the license collector or his representative is authorized by the ordinance to examine the books, papers, invoices, cigarettes, vending machines and receptacles containing cigarettes. Plaintiff does not object to the examination of the books, papers and invoices of the merchants. Even so, he argues that the provision authorizing an examination of cig-

arettes, vending machines and receptacles located on the premises violates the above mentioned section of the Constitution. We do not think so. The provision for said examination is reasonable and in aid of the collection of the tax. It does not violate the search and seizure clause of the Constitution. [24 R. C. L., p. 705.]

(b) He also challenges the section of the ordinance, which follows:

"Whenever the License Collector or any of his duly authorized representatives shall discover any cigarettes, subject to tax provided by this ordinance, and upon which said occupation tax has not been paid or the stamps affixed as herein required, the License Collector, or such representatives, are hereby authorized and empowered forthwith to seize and take possession of such cigarettes together with any vending machine or receptacle in which they are held for sale and the same shall thereupon be deemed to be forfeited to the city. The License Collector, may, within a reasonable time, thereafter by a public notice at least five days before the day of sale, sell such forfeited cigarettes at a place designated by him and from the proceeds of such sale shall collect the tax due thereon together with a penalty of fifty per centum thereof and the costs incurred in such proceedings. The Comptroller shall pay the balance, if any, to the person in whose possession such forfeited cigarettes were found; provided, however, that such seizure and sale shall not be deemed to relieve any person from fine or imprisonment provided herein for violation of any provision of this ordinance."

The provisions of said section are for the public good and to prevent fraud upon the revenue laws. They should "be considered fairly and reasonably so as to carry out the intention of the Legislature." [23 Am. Jur. 601, 602.] It is clear that it was not intended to declare a forfeiture of title to unstamped cigarettes, for it is provided that the balance of the proceeds of the sale, after the payment of the tax, penalty and costs, must be paid to the merchant or person who was in possession of the unstamped cigarettes. In effect, under said section, the tax is a lien on the cigarettes which may be sold, as therein provided, to enforce payment of the tax. "The mode of levying and collecting taxes is a matter confided to the legislative power, and such laws are 'laws of the land.' " [De Arman v. Williams, 93 Mo. 158, 163, 5 S. W. 904; Sec. 9915, R. S. 1929.]

Furthermore, the arrest of a merchant in possession of unstamped cigarettes seemingly is to be made concurrently with the seizure of the cigarettes, for the ordinance provides for the prosecution of persons violating the same, "and at least impliedly provides for a judicial hearing and determination of the question whether the property seized . . . comes within the condemnation of the act." [Star Square Auto Supply Co. v. Gerk, 325 Mo. 968, 30 S. W. (2d) 447, 456.]

The ordinance is not in violation of the due process clause of the constitutions.

■ (c) In this connection it is contended that a provision of the ordinance is a local or special law changing the rules of evidence because it provides that when cigarettes are without stamps, a prima facie presumption arises that they are kept in violation of the ordinance.

The ordinance provides that the absence of stamps on packages of cigarettes, which packages are not marked as having been received within the preceding twenty-four hours, raises a prima facie presumption of nonpayment of the tax.

The Federal provision with reference to cigarette stamps follows:

''Absence of stamps. The absence of the proper revenue stamp on any box of cigars or cigarettes sold, or offered for sale, or kept for sale, shall be notice to all persons that the tax has not been paid thereon, and shall be prima facie evidence of the nonpayment thereof.'' [26 U. S. C. A., sec. 812, par. f.]

Plaintiff admits that the provision under consideration must be considered with the section providing for a forfeiture, otherwise there is no changing of the rules of evidence by a local law. We have ruled that the ordinance provides no forfeiture. The provision changes no rule of evidence.

■ IV. Plaintiff also contends that the title to the ordinance violates Section 13, Article IV of the charter, which follows:

''No bill, except a general appropriation bill, which shall only embrace matters on account of which moneys are appropriated, shall contain more than one subject, which shall be clearly expressed in its title.'' This provision of the charter is almost identical with Section 28, Article IV of the Constitution with reference to the title of bills pending in the Legislature. From this he argues that cases construing said section of the Constitution are in point on the question as to whether or not the title to this ordinance is defective. He cites State v. Rawlings, 232 Mo. 544, 1. c. 558, 134 S. W. 530. In that case the title descended to details with reference to the subject matter of the statutes. The title under consideration follows:

''An ordinance to amend Art. 25 of Chap. 19 of the Revised Code of St. Louis of 1936, relating to a merchants license tax by adding thereto twelve new sections to be known as sections . . . relating to a license tax on the *occupation* of selling cigarettes at retail, providing for the method of payment thereof, providing means and methods for the administration and enforcement thereof, and containing an emergency clause.''

The title gives notice that the ordinance deals with the ''occupation of selling cigarettes at retail.'' It does not descend to details. The constitutional provision relied upon by plaintiff makes no such requirement. The rule is stated as follows:

''The evident object and purpose of the aforesaid requirement of

the organic law of this State is that the title of every legislative act shall indicate the general contents or subject matter of the act, which may be expressed in the title in a few or greater number of words; and if the title does not tend to mislead the public and the members of the Legislature as to the contents and subject matter of the legislative act, and if the title is not designed as a surreptitious cover to vicious and incongruous legislation, having no reasonable and natural relation to the subject expressed in the title, then such title does not impinge on, or violate, the constitutional requirement and mandate. [St. Louis v. Wetzel, 130 Mo. 600, 616, 31 S. W. 1045.] . . .

"As is said by our own court, in banc, in a case recently decided: 'We resolve the doubt, if any, in favor of validity, if the challenged legislation is germane and relates either directly or indirectly to the main subject' of the act as expressed in its title." [Star Square Auto Supply Co. v. Gerk, 325 Mo. 968, 1. c. 981, 30 S. W. (2d) 447.]

Under said rule the title is not in violation of the Constitution.

■ V. Plaintiff also contends that the ordinance violates Section 7596, Revised Statutes 1929, because it does not impose the tax in proportion to the "sales made during the next preceding year".

The section requires the city to fix the license fee in proportion to the sales made during the year next preceding *any fixed* date. The section does not prohibit the fixing of the fee in proportion to the sales made during the year next preceding the issuance of the license. It follows that the annual license fee may be determined from the date fixed for the expiration of the license. The ordinance fixed the first Monday of July for the expiration of licenses. Under the ordinance the license fee is fixed in proportion to the sales made during the year next preceding said date. The only mandatory requirement of Section 7596 is that the tax be levied "in proportion to the sales made." [Kansas City v. Threshing Machine Co., 337 Mo. 913, 1. c. 932, 87 S. W. (2d) 195.]

■ VI. Plaintiff also contends that the ordinance discriminates against him and in favor of dealers who sell cigarettes within the city but deliver the same to points in other cities or states.

The challenged provision of the ordinance follows: "Whenever any cigarettes upon which stamps have been placed by a retailer have been sold and shipped by him into another city or state for sale or use there . . . such dealer shall be entitled to a refund." This provision has no reference to the retail trade of merchants in the city. It has reference to shipments of cigarettes to other territory for sale at retail.

An ordinance of the City of Sedalia containing a similar provision was sustained in City of Sedalia ex rel. v. Standard Oil Co. of Indiana, 66 Fed. (2d) 757, 761; City of Sedalia ex rel. v. Shell Petroleum Corporation, 81 Fed. (2d) 193, 106 A. L. R. 1327.

VII. Plaintiff also contends that the ordinance in question violates Section 7287, Revised Statutes 1929, which follows: "No municipal corporation in this state shall have the power to impose a license tax upon any business, avocation, pursuit or calling unless such business, avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, *or unless such power be conferred by statute.*"

We have ruled that the ordinance under consideration is authorized by Section 7596, Revised Statutes 1929. The contention must be overruled.

The contentions considered and ruled dispose of other points made by the plaintiff.

The judgment should be affirmed. It is so ordered. On motion for rehearing, *Leedy, C. J.,* and *Ellison, J.,* withdraw concurrence. *Ellison, J.,* files a dissenting opinion, in which *Leedy, C. J.,* concurs. Opinion modified. *Hays, Clark, Tipton* and *Douglas, JJ.,* concur in the opinion as modified. Motion for rehearing overruled.

ELLISON, J. (dissenting).—I respectfully dissent from the holding in the principal opinion that the license tax of $1 per 1000 cigarettes sold, imposed on retailers by the St. Louis ordinance here assailed, is valid and does not contravene Section 47 of the 1937 Sales Tax Act (Laws Mo. 1937, 552, 568.)

The principal opinion unquestionably is correct in holding the tax levied by the ordinance is an occupation tax. Section 1406 B of the ordinance expressly so declares; and Section 7596, Revised Statutes 1929 (Mo. Stat. Ann., p. 6012), upon which the ordinance was based, provides that any city levying an occupation tax thereunder "may graduate the amount of annual license imposed . . . in proportion to the sales made . . . during the year next preceding any fixed date." The ordinance was adopted June 8, 1939, while the 1937 Act was in force. If the Act did not limit or suspend the operation of the general statute, Section 7596, supra, so as to outlaw such ordinances, then the ordinance here involved is valid; if it did, the tax is void.

Sections 2 and 6 of the 1937 Act levied upon every retail sale of tangible personal property (thereby including cigarettes) a tax equal to 2 per cent of the purchase price, to be paid by the purchaser. Then Section 47 provided:

"No city, town or village, . . . shall, either directly or indirectly, levy, impose or collect any tax upon the sale of or charge for any tangible personal property taxed by the state under the provisions of this act, or, upon the sale of or charge for any service or other thing taxed by the state under the provisions of this Act."

Appellant contends the tax on cigarettes imposed by the ordinance was and is void under that section because they were already sub-

jected to taxation by the State in the Act along with other tangible personal property sold at retail. The principal opinion holds to the contrary, that Section 47 did not affect the ordinance because: the tax levied by the ordinance was an occupation tax imposed on retail *sellers* partly for the purpose of regulating the sale of cigarettes; whereas Section 47, upon a proper construction merely forbade the imposition of municipal sales taxes like those imposed by the sales tax Act, namely, taxes upon the retail sale of tangible personal property payable by the *purchaser* and then only for revenue purposes. I think this ruling misconceives the purpose and intent of Section 47 of the 1937 Act.

To arrive at a correct construction of the section its context must be considered, together with the history of the legislation and the economic depression which provoked it. Of this latter and relevant current history we may take judicial notice. [State ex rel. Crutcher v. Koeln, 332 Mo. 1229, 1242(11), 61 S. W. (2d) 750, 756.] There have been four sales tax acts during the recent period of economic depression, each levying a direct or indirect tax on the retail sale of tangible personal property and the rendering of specified services for a limited period of two years, and each passed with an emergency clause. [Laws 1933-1934 (Ex. Sess.), p. 155; Laws 1935, p. 411; Laws 1937, p. 552; Laws 1939, p. 855, Mo. Stat. Ann., p. 8118.]

The first Act passed in 1934, imposed a tax of ½ per cent of the gross proceeds on the "privilege" of engaging in the business of selling such property. The tax was declared to be in addition to any and all other taxes except as therein otherwise provided, and certain exemptions were allowed. The 1935 Act doubled the tax for the ensuing biennium, making it 1 per cent. But instead of being a "privilege" tax on gross receipts, Section 5 of that and the two subsequent Acts declared it should be a tax "upon the sale, service or transaction," thereby making it a *direct* sales tax. [State ex rel. Mo. Portland Cement Co. v. Smith, 338 Mo. 409, 412, 90 S. W. (2d) 405, 406.] (Remember when we come later to consider the provisions of Section 47 of the 1937 Act, that when it was passed this banc decision rendered in February, 1936, had already recognized a distinction between direct and indirect sales taxes.) Section 4 of the 1935 and subsequent Acts was also changed to read that the tax imposed should be "in addition to any and all other taxes *and licenses* except as herein otherwise provided." The added words "and licenses" forecast that later sections of the Act might strike down certain licenses. And since a license is a necessary incident of a regulatory occupation tax, the section furnished legislative warning that the sales tax would supercede occupation taxes and the authority therefor if other sections of the Act so provided. Certain exemptions were allowed in this 1935 Act, but we need not mention them.

The 1937 Act again doubled the tax making it 2 per cent to and

and through the year 1939. Several changes are notable in this and the 1939 Act. Section 5 of the 1935 Act made the seller responsible for the collection of the tax, and forbade him to advertise or hold out that he would absorb it. This of itself was an implied requirement that the purchaser pay the tax, but a new Section 6 was inserted in the 1937 and 1939 Acts expressly so requiring. It is well known as a matter of current history that this was done at the insistence of small retailers to prevent chain stores and big merchandising establishments from absorbing or rebating the tax and thereby cutting prices. The fact is of no special importance except as showing that from 1935 on the tax was essentially a tax on the purchaser, and was regarded as burdensome by retailers if they were forced by competition to pay it.

Another change in the 1937 and 1939 Acts was this. Among the exceptions appearing in the 1934 and 1935 Acts was one applying to sales of things which the State of Missouri was prohibited from "further taxing under the Constitution of this state." This referred to sales of motor fuel, a special state highway tax on which had been stabilized at two cents per gallon for a period of ten years by Constitutional amendment Section 44a, Article IV, adopted in November, 1928. [See Secs. 7794, 7795, 7796, R. S. 1929, Mo. Stat. Ann., p. 5246, and State ex rel. Mo. Portland Cement Co. v. Smith, supra, 338 Mo. l. c. 416, 90 S. W. (2d) l. c. 408.] Since that ten year stabilization period would expire toward the end of 1938, during the biennium, the Legislature added this further exemption in Section 3:

"In order to avoid double taxation under the provisions of this Act, no tax shall be paid or collected under this Act upon the sale at retail of any motor fuel, subject to an exercise or sale tax under another law of this state."

Note the stated purpose of the exemption was to avoid double taxation; and that the two taxes referred to as creating the duplication were the tax imposed by the Act, which was payable by the purchaser, and any excise or sales tax levied on motor fuel by another law of the State. Now the so-called gasoline tax in force at the time (and to this day) was payable by the seller, Sections 7795, 7796, supra; and furthermore an excise tax includes "every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation." [State ex rel. Mo. Port. Cement Co. v. Smith, supra, 338 Mo. l. c. 413, 90 S. W. (2d) l. c. 407.] The point to be remembered is that in writing this exemption in Section 3 of the Act the Legislature drew no distinction between a tax payable by the buyer and one payable by the seller, recognizing the exaction of both on the same transaction would impose a double burden.

Another new exemption introduced was that expressed in Section

47 of the 1937 and 1939 Acts, upon which the instant case turns. The Senate Journal, page 893, shows the amendment was introduced by Senator Cope and adopted on May 17, 1937. We here set out again the pertinent parts of the section, with the important words emphasized:

 "No city, town or village, . . . shall, *either directly or indirectly*, levy, impose or collect *any* tax upon the sale of . . . *any* tangible personal property taxed by the state under the provisions of this act, . . ."

There being disagreement between the Senate and the House, the bill went to a conference committee and on June 3 was passed with amendments recommended by that committee. One of these recommendations shown by the Senate Journal, page 1104, of which we may take judicial notice (State ex rel. Karbe v. Bader, 336 Mo. 259, 266, 78 S. W. (2d) 835, 838) was that a new section be added "immediately following" the present Section 47. This new section appears in the Acts as Section 48, and reads as follows:

"Nothing contained in this Act shall prevent the levying or collecting by any city, town or village of *any tax or license* now authorized by any ordinance of such city, town or village." (Italics ours.)

The obvious and necessary purpose of the new section, thus designedly placed immediately after Section 47, was to save from the prohibition of the latter any tax or license already authorized by cities, towns and villages at the time of the passage of the Act. And since we know many of these taxes and licenses were graduated upon sales and levied upon the seller,* it is evident here again the Legislature thought that in the absence of Section 48 the provisions of Section 47 would prohibit municipal sales taxes and licenses imposed upon the seller and based on sales, including even occupation taxes for the purpose of regulation—since a license is an incident of such taxes.

This harmonizes with the provisions of Section 4 already mentioned, which declare the tax imposed shall be in addition to any and all other taxes and *licenses, except* as in the Act otherwise provided. Having thus increased the tax burden, Section 47 was inserted diminishing the burden by providing that no city, town or village should directly or *indirectly* levy, impose or collect and tax upon the sale of any tangibile personal property taxed by the State under the Act; and then a saving clause was added by Section 48 preserving from the operation of Section 47 taxes and *licenses* already in force in such cities, towns and villages. Although the 1937 Act levies its

*Viquesney v. Kansas City, 305 Mo. 488, 495-6, 266 S. W. 700, 702; State ex rel. Asotsky v. Regan, 317 Mo. 1216, 298 S. W. 747; Ex parte Asotsky, 319 Mo. 810, 5 S. W. (2d) 22, 62 A. L. R. 95; Automobile Gasoline Co. v. St. Louis, 326 Mo. 435, 32 S. W. (2d) 281; Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S. W. (2d) 195; Kroger Grocery & Baking Co. v. St. Louis, 341 Mo. 62, 106 S. W. (2d) 435.

tax against the purchaser, there is nothing in Section 47 or its context, so far as I can see, restricting its prohibitions to municipal sales taxes against a purchaser, and leaving cities, towns and villages free to pile on additional taxes against the same sale or transaction payable by the seller. There can be no purchaser without a seller. A tax on the latter usually at least is an indirect tax on the former, and on the sale, which is exactly what Section 47 prohibits.

It may be suggested that if the seller absorb the tax it does not become a charge either on the purchaser or the sale. But it is well known that any retailer in business for profit must take in more than he spends. If the increase in his outlay from an occupation tax is trifling perhaps he would absorb it and say nothing, but if it be considerable he must increase his prices by passing it on to the purchaser. Since Section 47 of the Act does not limit the size of municipal taxes based on sales, but simply prohibits them altogether, the only fair construction of the section is that it regards any sales tax against the seller as an indirect tax on the sale. A tax of $1 per 1000 cigarettes is a tax of 2 cents per package of 20. Assuming the average price per package to be 15 cents, the State sales tax is 3 mills. In other words the tax under the ordinance is 13-1/3 per cent of the sale price and just about 7 times the State tax. The framers of the ordinance must have thought the 2 per cent tax would reach the purchaser and therefore invite evasion, because Section 1406 J thereof authorizes the seizure of any unstamped cigarettes subject to the tax in the hands of *any* person—not alone the retailer.

The respondent City cites Ex parte Asotsky, 319 Mo. 810, 818, 5 S. W. (2d) 22, 24, 62 A. L. R. 95, as distinguishing between a tax payable by the purchaser and one payable by the seller, and it does—but in this way and on these facts. In that case Kansas City had levied a 20 per cent stamp tax on cigarettes, payable by the seller, and allowed him a 10 per cent discount on the price of the stamps. (Sec. 1406 C of the instant ordinance does the same thing, doubtless as a compensation for the dealer's outlay of money and work in buying and affixing the stamps.) This provision was attacked as violative of Section 3, Article X of the State Constitution, on the theory that the exaction of a 20 per cent tax and the allowance of a 10 per cent discount therefrom to the dealer, made the tax partly for *private* purposes. The opinion overruled the contention, saying that since the tax was against the seller, the discount simply resulted in reducing his tax 2 per cent, making it 18 per cent; but that if the tax had been against the purchaser, and the law had taken his tax money away from him and given 10 per cent of it to the dealer, a different situation would be presented.

Another case which seems to be more in point is Seattle Gas Co. v. Seattle, 192 Wash. 456, 73 Pac. (2d) 1312-14. There the City of Seattle had passed an ordinance levying a "license or occupation" tax

upon the business of selling gas, the "fee" being three per cent of the seller's gross income during the preceding year. But he was allowed in computing that income to deduct any amount paid the State or city as excise taxes levied or imposed upon the *sale or distribution of property or services*. The plaintiff gas company claimed but was denied the right under that provision to deduct: (1) the "fee" it had paid under the same ordinance for the preceding year; (2) the amounts. paid under two state statutes, one levying a percentage "privilege" tax on gross incomes, and the other a percentage sales tax on gross operating revenues.

By a five to four vote the Washington Supreme Court ruled the plaintiff was not entitled to the deductions because (as we understand the decision) the italicized words in the deduction clause of the ordinance referred only to sales taxes in the sense of taxes upon transfers of property or sales of services, whereas the taxes levied by the ordinance and one statute were on gross income and the other on gross operating revenues. The dissenting opinion declared the ordinance contemplated a deduction of the taxes, saying: "There is no magic in a name. By whatever name the tax may be called, its character must be determined by its incidence." In other words the four dissenting judges held the plaintiff was entitled to the deductions because the taxes paid on gross income and operating revenues were sales taxes within the meaning of the deduction clause of the ordinance.

Another case in point is Panhandle Oil Co. v. Mississippi, 277 U. S. 218, 72 L. Ed. 857, 48 Sup. Ct. 451. There the State of Mississippi had imposed on *dealers* a privilege tax of a specified number of cents per gallon on gasoline sold. The plaintiff claimed a deduction for gasoline sold to certain instrumentalities of the United States Government, on the theory that a dealer's tax on that gasoline would be in effect a tax against the Government—the *purchaser*—which was exempt from tax. The United States Supreme Court by a five to four vote upheld the contention. But the four dissenting justices. did not dispute that the tax was against the Government; their view was that the Government was *liable* for the tax like any citizen of the State. The decision therefore was unanimous on the question here involved. The majority opinion said (omitting citations):

"The validity of the taxes claimed is to be determined by the practical effect of enforcement in respect of sales to the government. A charge at the prescribed rate is made on account of every gallon acquired by the United States. It is immaterial that the seller and not the purchaser is required to report and make payment to the State. Sale and purchase constitute a transaction by which the tax is measured and on which the burden rests . . . To use the number of gallons sold the United States as a measure of the privilege tax is in substance and legal effect to tax the sale. . . . And that is to tax the United States—to exact tribute on its transactions and apply the same to the support of the State."

These two decisions were written without any statute like Section 47 of our 1937 Act, which automatically eliminates any distinction between sales taxes against the purchaser and those against the seller. It does not use the technical terms sales tax and occupation tax, or the words purchaser and seller, but broadly declares no city, town or village shall either directly or *indirectly* levy, impose or collect *any* tax upon the *sale* of any tangible personal property taxed by the State under the Act. The reason for the provision is clear. In the space of less than four years, during a period of depression, the State had quadrupled a tax against rich and poor alike, on the sale of all such property, including the necessaries of life—food, clothing, fuel. The Legislature determined to prohibit the municipalities of the State from increasing that tax burden by levying further sales taxes on the same property, but permitted taxes in existence to stand.

 Nevertheless it levied the tax grudingly, two years at a time. Section 47 of the 1937 and 1939 Acts merely suspended the operation of Section 7596, supra, during those biennial periods, insofar as that statute was inconsistent with them. That was legal and proper. [59 C. J., sec. 553, p. 940.] The Legislature did precisely the same thing when it remitted the penalties on delinquent *ad valorem* taxes by Laws Mo. 1933, page 423, and Laws Mo. 1933-4, Ex. Sess., page 152. It was ruled in two unanimous banc opinions that these temporary laws had the effect of suspending any general or local statutes in conflict therewith. [State ex rel. Crutcher v. Koeln, supra, 332 Mo. l. c. 1242 (12), 61 S. W. (2d) l. c. 756; State ex rel. McKittrick v. Bair, 333 Mo. 1, 17(7), 63 S. W. (2d) 64, 67.]

However, Section 47 of the Acts does not suspend occupation taxes altogether. It does not abolish any form of sales tax already in existence; neither does it prohibit future occupation taxes based on any method of graduation except sales. Such taxes are authorized by many statutes applicable to cities, towns and villages of various classifications. [Sec. 6171 (XVII, XIX), R. S. 1929, Mo. Stat. Ann., p. 5301; Laws Mo. 1939, 523, 525; Laws Mo. 1931, p. 276; Sec. 7046, R. S. 1929, Mo. Stat. Ann., p. 5762; Sec. 7097, R. S. 1929, Mo. Stat. Ann., p. 5796; Sec. 7298, R. S. 1929, Mo Stat. Ann., p. 5879.] It was held in Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 919, 933, 87 S. W. (2d) 195, 198, 206-7, that the occupation tax authorized by Section 7596, supra, upon which the ordinance is based, *must* be graduated on sales. But that is not true of the other statutes cited above. Under the latter, the occupation tax may be a flat sum, or graduated on floor space, seating capacity, horsepower, etc.; and it is obvious the dealer would have to pay these whether he made any sales or not.

If the above construction of Section 47 of the 1937 Act is not correct, it necessarily follows that the cities, towns and villages of this State can without restraint levy taxes of one technical kind or another

against the seller upon the sale of tangible personal property and services, in addition to the State sales tax. We recognize the plight of the City of St. Louis with a large relief roll and many of its effective population residing outside where they are not subject to its *ad valorem* taxes on peronalty. But the statutes can only be construed as they read.

For these reasons I think the judgment should be reversed and the cause remanded. *Leedy, C. J.,* concurs.